## TURNER v. PENNSYLVANIA.

No. 107. Argued November 16–17, 1948.—Decided June 27, 1949.

*Edwin P. Rome* argued the cause for petitioner. With him on the brief was *Clinton Budd Palmer*.

*Colbert C. McClain* argued the cause for respondent. With him on the brief was *John H. Maurer*.

Mr. Justice Frankfurter announced the judgment of the Court and an opinion in which Mr. Justice Murphy and Mr. Justice Rutledge join.

Our ruling in *Watts* v. *Indiana, ante,* p. 49, is decisive of the present case. It is also a capital case in which the petitioner claims that his conviction for first-degree murder resulted from the use of incriminatory statements obtained under circumstances which should have barred their admission. The Supreme Court of Pennsylvania, in affirming the conviction, rejected this claim. 358 Pa. 350, 58 A. 2d 61. We brought the case here to measure against the requirements of due process the circumstances giving rise to the claim. 334 U. S. 858. Again we take conflicts of testimony as they were resolved by the State's adjudication.

For six months the Philadelphia police had been investigating the felonious death of one Frank Andres. At 10:30 in the morning of June 3, 1946, they arrested Aaron Turner, the petitioner, on suspicion of the homicide and took him to the office of the Homicide Division at the City Hall Building. The officers making the arrest had no warrant and did not tell the petitioner why he was being arrested. These officers began to question the petitioner as soon as they reached the City Hall police station. One of them examined the petitioner for three hours on that afternoon and again that night from eight to eleven o'clock. From time to time other officers joined in the interrogation. Petitioner persistently denied any knowledge of the murder.

The next morning, June 4, the petitioner was booked on the police records as being held for questioning. Later that day he was questioned for about four hours more. On June 5 he was interrogated for another four hours and on the 6th for day and night sessions totaling six hours. The questioning was conducted sometimes by one officer and at other times by several working together; it appears,

in fact, that whenever one of the police officers interested in the investigation had any free time he would have the petitioner brought from his cell for questioning.

On June 7, the day when a confession was finally obtained, questioning began in the afternoon and continued for three hours. Later that day the officers who had been present during the afternoon returned with others to resume the examination of petitioner. Despite the fact that he was falsely told that other suspects had "opened up" on him, petitioner repeatedly denied guilt. But finally, at about eleven o'clock, petitioner stated that he had killed the person for whose murder he was later arraigned. At nine o'clock the following morning the same police officers started to reduce his statement to writing, interrupted this process to bring him for a preliminary hearing before a magistrate sitting in the same building, and returned to the transcript of his statement which was completed by about noon.

The petitioner was not permitted to see friends or relatives during the entire period of custody; he was not informed of his right to remain silent until after he had been under the pressure of a long process of interrogation and had actually yielded to it. With commendable candor the district attorney admitted that a hearing was withheld until interrogation had produced confession. The delay of five days thus accounted for was in violation of a Pennsylvania statute which requires that arrested persons be given a prompt preliminary hearing.

At the trial, petitioner objected to the introduction of his statement on the ground that it was the product of police conduct of a nature condemned by our previous cases. The trial judge overruled petitioner's objection to the use of the confession but told the jury to disregard it if they found it to have been involuntary. He also told them that it was common sense "not [to] send them [suspects] to the magistrate before you have sufficient

information to hold an alleged culprit for the Grand Jury." He refused to charge that in considering the voluntariness of the confession the prolonged interrogation should be considered.

The jury returned a verdict of guilty and recommended the death penalty. The Supreme Court of Pennsylvania affirmed the conviction in an opinion stressing the probable guilt of the petitioner and assuming that the alternatives before it were either to approve the conduct of the police or to turn the petitioner "loose upon [society] after he has confessed his guilt." 358 Pa. at 367.

Putting this case beside the considerations set forth in our opinion in *Watts* v. *Indiana, ante,* p. 49, leaves open no other possible conclusion than that petitioner's confession was obtained under circumstances which made its use at the trial a denial of due process. We must, accordingly, reverse the judgment and remand the case.

There remains, however, an additional complication. The police arrested two other men, Johnson and Lofton, who were suspected as co-principals with Turner in the Andres murder. These two also made confessions involving Turner as well as themselves. Turner signed their confessions and they were introduced against him at the trial. Since a new trial is called for, issues raised by these confessions call for notice.

Clearly the same considerations that bar admission of the confession by Turner made over his own name extend to his contemporaneous adoption of the Johnson and Lofton confessions. But these statements may be introduced not as his own confessions but as confessions by co-principals. In that event Pennsylvania may, as a matter of local evidentiary law, hold that the hearsay rule requires the exclusion of statements by co-principals not on trial. Assuming, however, that as a matter of local law these statements are admissible, there would then arise the question whether under the Fourteenth

Amendment a coerced statement may be excluded on objection of one not coerced into making it. At this stage, however, this is a wholly hypothetical question which, as a constitutional issue, we ought not hypothetically to answer. We could not answer it, in any event, without knowledge that Johnson's and Lofton's confessions were also coerced, and the facts necessary to that determination are not before us.

Such other contentions as the use of statements made· at a magistrate's hearing when the accused had no counsel may be disposed of by Pennsylvania cases, or for other reasons may fail to arise on retrial of the case. See, e. g., *Commonwealth* v. *Lenousky,* 206 Pa. 277, 55 A. 977, cited with approval in *Commonwealth* v. *Westwood,* 324 Pa. 289, 188 A. 304.

*Reversed.*

Mr. Justice Black concurs in the judgment on the authority of *Chambers* v. *Florida,* 309 U. S. 227; *Ashcraft* v. *Tennessee,* 322 U. S. 143.

On the record before us and in view of the consideration given to the evidence by the state courts and the conclusion reached, The Chief Justice, Mr. Justice Reed and Mr. Justice Burton believe that the judgment should be affirmed.

[See *ante,* p. 57, for opinion of Mr. Justice Jackson, concurring in the result in No. 610, *Watts* v. *Indiana, ante,* p. 49, and dissenting in this case and in No. 76, *Harris* v. *South Carolina, post,* p. 68.]

Mr. Justice Douglas, concurring.

The undisputed facts surrounding the arrest and confession of the petitioner in this case are as follows:

Petitioner was arrested June 3, 1946, on suspicion of committing a homicide about six months after the crime

had been committed. At the time of his arrest he was not taken before a committing magistrate, as required by Pennsylvania law. He was held five days before being lawfully committed to custody. During this confinement he did not have the aid of family, friends, or counsel. He was not informed of his constitutional rights at the outset of his detention.

During this confinement petitioner was subject to continual interrogations by a number of police officers, who questioned him individually and in small groups. The day of his arrest he was questioned about three hours in the afternoon and again in the evening. The next two days he was questioned three to four hours in the afternoon. The next day the questioning was intensified and he was again subjected to both day and evening sessions. On the 7th of June, the day he finally confessed, the interrogations were intensive, once again being held afternoon and evening. Petitioner denied his guilt, even after being informed that other suspects had issued statements incriminating him. About eleven o'clock in the evening, after three hours of interrogation, petitioner finally indicated that he wished to make a statement. This confession was set down on paper the next day, and petitioner signed it after he had been committed by a magistrate.

These interrogations had been conducted by at least seven different officers. They were conducted in petitioner's cell, in a small office, and in a room which had a stand-up screen where suspects were put for identification. It was admitted that the reason petitioner was not brought before a magistrate was because he had not given the answers which the police wanted and which they believed he could give.

The case is but another vivid illustration of the use of illegal detentions to exact confessions. It is governed by *Watts* v. *Indiana, ante,* p. 49, decided this day.