THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* AN-
DRÉS RIVERA PÉREZ, Defendant and Appellant.

No. 14302. Argued February 1, 1950.—Decided March 29, 1950.

116

*Eduardo Ortiz Reyes* for appellant. *Vicente Géigel Polanco,
Attorney General, J. Rivera Barreras, Fiscal of the Supreme
Court,* and *Fernando Fornaris, Jr., Assistant Fiscal,* for
appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of
the Court.

Appellant was convicted by the court of burglary in the
first degree and sentenced to serve an indefinite term of one
to 15 years' imprisonment in the penitentiary.

He set up a demurrer for lack of jurisdiction of the
lower court on the ground that the court with jurisdiction
of this action was the Juvenile Court, which we shall con-
sider forthwith. Appellant bases his contention on the
fact that a criminal procedure was brought against him for
petit larceny in the lower court when he was not yet 16 years
old, for which reason the action was dismissed. He thinks
that thereafter he was subject to the jurisdiction of the Juve-
nile Court, and that therefore, as he was under 21 years of age
when he was sentenced in the case at bar, the judgment is
void since jurisdiction of this action lies in the Juvenile
Court, pursuant to *Torres* v. *Saldaña,* 59 P.R.R. 633.

The doctrine of the *Torres* case is not applicable to the
facts of this case. We decided there that the phrase "or
having once come within the jurisdiction of the Juvenile
Court by the provisions of this Act, has not attained his

majority" contained in the definition of the word "child" in § 8 of Act No. 37 approved March 11, 1915 (Sess. Laws, p. 71), establishing a system of juvenile courts, etc.,[1] meant that a person within the scope of that definition could not be tried or sentenced by a court of ordinary jurisdiction such as the District Court of San Juan. By liberally construing the statute we reached the conclusion that the Juvenile Courts not only retained jurisdiction over the person of the child in the particular case in which said jurisdiction had been exercised before the child attained 16 years of age, but also in any other case against the child until he reached his majority.

The facts in the *Torres* case justified the application of that doctrine as Torres had been adjudged a delinquent child by the Juvenile Court for the Judicial District of San Juan, when he was only 15 years old, for an offense of burglary, and has remained thereafter subject to the exclusive jurisdiction of said court until he becomes of age. Accordingly, when he was sentenced to serve one-year imprisonment in the penitentiary for burglary in the first degree by a court of ordinary jurisdiction, before his 21st birthday, said judgment, being enforced, was declared void and he was discharged and delivered to the corresponding Juvenile Court.

The facts in this case are different. Here, the Juvenile Court never acquired jurisdiction over the person of appellant in the case in which he was accused in the lower court before he was 16 years old. Hence, the exclusive jurisdiction of the Juvenile Court under the doctrine of the *Torres*

---

[1] Said § 8 insofar as pertinent provides:

"For the purposes of this Act, the word 'parents' or 'parent' shall mean one or both parents, as is consistent with the intent of this Act; the word 'child' or 'children' shall include one child or more than one, as is consistent with the intent of this Act, and shall, unless specifically stated otherwise, include any child within Porto Rico who is under sixteen years of age, *or having once come within the jurisdiction of the juvenile court by the provisions of this Act has not attained its majority* . . . (Italics ours.)

case can not be invoked to annul the jurisdiction of the lower court, which was validly exercised herein.

Let us now examine the errors assigned.

██ ██ The following is the evidence presented to the trial judge, as correctly summarized by the Assistant *Fiscal* of this Court in his brief:

"The evidence for the prosecution tended to show that on the night of November 10–11, 1948, Sixto Sierra Flores had a small café in the city of San Juan; that in this establishment he had a radio valued at $45; that at 7:30 on the night of November 10 he closed his establishment and on returning the next morning he found that the lock of the door had been tampered with and the 'Westinghouse' radio was missing; also a kitchen knife and other implements; that about November 12, 1948 a boy called Miguel A. Soto (A) Sarnita sold to Rafael Ramos Méndez the 'Westinghouse' radio for $20; that at that moment defendant Andrés Rivera Pérez was not with Sarnita; that the same night of the events, the defendant, who was also known as 'Jr.' was taken to the Detective Bureau where he explained that on the night in question he had broken into a small café accompanied by Miguel Angel Soto Rivera, Ismael Vázquez, and Luis Bermúdez, that they had broken into the premises between 12:00 and 1:00 in the morning and had taken away a radio, a knife, and had eaten some fritters; that the defendant took detective William Fernández to the place where the radio was sold and the detective seized it; that the defendant was released in order that he cooperated with the detective force, and in effect next day he helped and cooperated in the arrest of Miguel Angel Soto Rivera and Ismael Vázquez; that Ismael Vázquez, as well as the defendant, admitted that they had broken into the small café and had taken away a radio, a knife, and some fritters.

"The evidence for the defense tended to show that the defendant appeared personally at police headquarters and there he informed that those boys were going to incriminate him in the matter of the burglary and that he wished to cooperate and help in their arrest; that the defendant helped policeman José A. Torres to arrest Ismael Vázquez; that he likewise helped policeman Hiram Vélez in Sarnita's capture; that the defendant was threatened by the others who were locked up in the cell at

Headquarters, that he would pay one way or another for the dirty trick he had played on them; that at no time had the defendant made any sort of statements to detective William Fernández with respect to the facts with which he was charged in the information; that detective William Fernández told the defendant that he would turn him loose if he cooperated with them; that in fact he turned him loose."

The evidence believed by the trial judge is sufficient to support the conviction had. And there is nothing in the record to justify the imputation of passion, prejudice, and partiality. The error in that sense, which is the third one in the order of assignment, does not exist. The questions posed by the Judge to the witnesses were intended to enlighten the facts and nothing else.

 Appellant assigns as an error the allegedly incorrect action of the district attorney, prejudicial to the defendant, in bringing to the attention of the court a testimony which was not in evidence. We do not agree. It appears from the record that the appellant took the witness stand in his own defense and on cross-examination by the district attorney, the latter asked him whether he (the defendant) had heard Luis Bermúdez (a co-author) testify to the district attorney in the presence of the defendant that "Sarnita," Vázquez, the defendant and Bermúdez had broken the padlock and had taken away a kitchen knife and a radio. Appellant answered that he had not heard those words. On direct examination appellant testified, in answer to his attorney's questions, that while he was at the corner of San José and Sol Streets of San Juan he had seen Bermúdez go down, accompanied by someone else, with a package, and that he had accused them with the words "aha, you are stealing," to which the others replied "if you turn us in we shall implicate you in this case."

It is known that statements made by a co-author in the presence of the defendant without the latter denying them or objecting thereto, are admissible in evidence. *People* v. *Gelpí,* 59 P.R.R. 556; Underhill's Criminal Evidence, § 259,

p. 489 *et seq.* Had the defendant admitted that he heard said statements, the district attorney could have continued his cross-examination and tried to obtain an admission that he had not denied or objected to them. Had the defendant maintained that he denied them, then the district attorney in his turn in rebuttal could have contradicted him. But the truth is that the defendant denied having heard them and therefore there was no basis for rebutting evidence. The error charged was not committed.

 Finally, appellant maintains that the lower court erred in admitting the testimony of detective William Fernández regarding certain admissions of the defendant which amounted to a confession of guilt, without the district attorney having previously shown that the confession was made voluntarily and not under the influence of promises or threats.

During the direct examination by the district attorney of the witness for the prosecution, William Fernández, the following testimony was given: (T.E. 8)

"Q. If Andrés Rivera Pérez, who has been accused today, made any admission to you, say so.

"A. He was taken to the Detective Bureau and he explained that that night . . .

"Q. Who?

"A. Jr. Andrés Rivera Pérez informed that that night he had, together with Miguel Angel Soto Rivera, Ismael Vázquez, and Luis Bermúdez, they had broken into a small café.

"Q. At what time?

"A. Between 12:00 and 1:00 in the morning. They had taken away a radio, a knife, and they had eaten some fritters. Then he took me to the place where he had sold the radio. I seized the radio."

We agree with the appellant that the foregoing statements made by the defendant to the detective constitute in effect a confession of guilt and that they are not mere admissions. They represent an absolute acknowledgment of the crime charged. Therefore, the evidence should estab-

lish that they were made voluntarily and not under the influence of.promises or threats. The defendant denies having made the aforesaid statements. On the other hand, he insinuates that the detective promised "to turn him loose" if he cooperated with him. But we are convinced, after a thorough examination of the record, that the same discloses with reasonable clarity that said statements were in effect spontaneously made by the defendant without there having been at the time he made them, not even the opportunity to promise him immunity or privileges or to coerce him. It was after the defendant had told detective William Fernández that together with others he had entered into the place broken into, and had carried away a knife and a radio, that the defendant took the detective to the place where they had sold the radio. And it was *after* the defendant had made such statements, that he asked the detective to release him in order to cooperate in the arrest of the others, to which the former agreed. Under these circumstances it could not be successfully maintained that the fact that the defendant was released moved him to confess. To this effect only, see *United States* v. *Mitchell*, 322 U. S. 65, 88 L. ed. 1140.

There is nothing in the record indicating the existence of violence or threats prior to the moment during which the defendant confessed. Neither is there any other circumstance which could justify a rejection of said confession, according to the decisions of the United States Supreme Court in *Watts* v. *Indiana*, 338 U. S. 49, 93 L. ed. 1435; *Harris* v. *South Carolina*, 338 U.S. 58, 93 L.ed 1440; *Turner* v. *Pennsylvania*, 338 U. S. 62, 93 L. ed. 1444; *Haley* v. *Ohio*, 332 U. S. 596, 92 L. ed 224; *Ashcraft* v. *Tennessee*, 322 U. S. 143, 88 L. ed. 1192 and *Chambers* v. *Florida*, 309 U. S. 227, 84 L. ed. 716.

Since it appears from the record that appellant's confession was voluntary, we can not agree with him in this assignment of error.

The judgment will be affirmed.