### Ex parte ESTRADA.
#### Civ. No. 4125.

United States District Court
N. D. Texas, Dallas Division.
Oct. 28, 1950.

714

Sam Barbaria, Dallas, Tex., for petitioner.

Frank B. Potter, United States Attorney, Fort Worth, Tex., and O. Morris Harrell, Assistant United States Attorney, Dallas, Tex., for the United States.

ATWELL, Chief Judge.

The charge was filed against this Mexican citizen in February, I believe it was, of the present year, and, on March 2, 1950, the Court, upon an application for writ of habeas corpus, granted him bail in the sum of $1000. That bail was given, and, the petitioner has been at liberty since then.

On September 22, 1950, the Congress passed what is called the Subversive Activities Control Act.

And, I presume that the placing of this citizen in jail was taken under Section 4 of that Act, 8 U.S.C.A. § 137-3. That section is a portion of a section which is an amendment to the Naturalization Act, which was passed on October 16, 1918, and later amended, and, as thus amended, was again amended on the date last mentioned, that is, September 22, 1950.

Section 22 of that amendment, 8 U.S.C.A. § 137 et seq., provides that any alien that is a member of one of the classes therein named, shall be excluded from admission into the United States. That, of course, is not applicable here, he is already in the United States.

Subdivision 4 of that section, does not deal with those who are entering, but, rather, with those who are already in the United States, and, who, after being so entered, become a member of one of the classes of aliens enumerated in the subdivisions of Section 22, to-wit: Subdivision 1 and 2, 8 U.S.C.A. § 137(1, 2).

That section provides that any such member "shall, upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in the Immigration Act of February 5, 1917."

Subdivision (b) of Section 4, provides that "The Attorney General shall, in like manner as provided in subsection (a) of this section, take into custody and deport from the United States any alien who at any time, whether before or after the effective date of this Act, has engaged, or has had a purpose to engage, in any of the activities described in paragraph (1) or in any of the subparagraphs of paragraph (3) of section 1, * * *."

Section 5, 8 U.S.C.A. § 137-4, provides that Boards of Special Inquiry and appeals from the decisions of such Boards, are unnecessary, until after the case is reported to the Attorney General.

Of course, that is directly in the face of the decision by the Supreme Court.

The application for the writ raises the question of due process under the Fourteenth Amendment of this Subversive Activities Control Act, in that no sort of an inquiry, or trial, or investigation, has been had, or given to the alien. He is just taken up and placed in jail.

We have long since learned that the Constitution applies to the alien, as it does to the natural born citizen, and, we tremble,

and resist any such authority on the part of anybody in office.

■ "Due process" is a big phrase. It applies not only to civil and property rights, but, likewise, to criminal trials. It means, I think, that the method shall be consistent with fundamental principles of liberty and justice—frequently called, "the law of the land."

In Garland v. State of Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772, the Supreme Court said that the due process of law does not require any particular form, or, procedure, so long as the accused has had suffiient notice of accusation and adequate opportunity to defend, citing Rogers v. Peck, 199 U.S. 425, 26 S.Ct. 87, 50 L.Ed. 256.

In 338 U.S., the Supreme Court spoke four times. In Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 1357, 93 L.Ed. 1801; Harris v. South Carolina, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815; Turner v. Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 1357, 93 L.Ed. 1810; and, Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782. Those cases are not directly in point, but they do show the extreme sensitiveness of the American judicial ear to the cries of a person who has not been afforded that due process which is in conformity with the enlightened procedure of liberty.

See also Buchalter v. People of State of New York, 319 U.S. 427, 63 S.Ct. 1129, 87 L.Ed. 1492. Grimsley v. U. S., 5 Cir., 50 F.2d 509.

The other side of this matter is that this petitioner has heretofore been arrested and upon a writ of habeas corpus was remanded but allowed to go free upon giving a $1,000 bond, which he did.

So far as the Court is advised in argument here, nothing has taken place, no hearing on that charge. This writ is wholly without any hearing or opportunity to be heard, by the defendant. He was merely grabbed from freedom, and placed in prison.

Our form of government, the perpetuation of which is the big question of today, in which we are all tremendously interested, and which we devoutly resolve shall not be a failure, is for the very purpose of protecting the individual—for securing him against illegal arrest, or, deportation, or, imprisonment. He must have his day to be heard and to be defended, if necessary, by counsel; to have witnesses, if necessary, and such hearing must be in public.

There is no room in America for star chamber proceedings.

Mr. Justice Douglas of the Supreme Court, on October 9th, in Agoston v. Com. of Pennsylvania, 71 S.Ct. 9, 10, said that, "police may not be allowed to substitute their system of inquisition or protective custody for the safeguards of a hearing before a magistrate. My conviction is that only by consistent application of that principle can we uproot in this country the third-degree methods of the police."

That was in a case of that sort.

■ Of course, the instant case shows no third-degree methods, but it does appear to show a commitment to prison without a hearing.

The defendant will go free on the bond which has heretofore been given, and, respond to the hearing which is set for November 2nd, at 9:00 a. m., notice of which has been given since this writ was granted.