DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. Stephen H. Guckert, Jr, defendant below and appellant herein, entered a no contest plea to preparation of drugs for sale, in violation of R.C. 2925.07(A).
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY FAILING TO GRANT THE MOTION TO SUPPRESS BASED UPON THE VIOLATION OF HIS FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION."
SECOND ASSIGNMENT OF ERROR:
 "THE COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FAILING TO GRANT THE MOTION TO SUPPRESS DEALING WITH STATEMENTS MADE TO PATROLMAN HICKEY AND DETECTIVE NOHE. SAID STATEMENTS WERE IN VIOLATION OF THE MIRANDA RULING AND WERE NOT VOLUNTARY."
Our review of the record reveals the following relevant facts. On March 26, 1999, at approximately 11:24 p.m., Marietta Police Officer Thomas M. Hickey observed appellant's vehicle make an improper left turn. Consequently, Officer Hickey stopped appellant's vehicle.
Officer Hickey advised appellant of the traffic violation, and asked appellant for his license, registration, and proof of insurance. Hickey also noticed that the two passengers were not wearing their seatbelts. Hickey advised the passengers that they would receive citations for their failure to wear seatbelts.
After Officer Hickey obtained appellant's documents, Hickey returned to the patrol car. As Hickey prepared the paperwork for issuing the citations, Hickey radioed for a driver's license check. Hickey learned that appellant's driving privileges had been suspended indefinitely and that appellant had a prior drug paraphernalia violation. At that point, Hickey decided to walk his drug canine, Marco, who was sitting in the back seat of Hickey's patrol car, around appellant's vehicle.
Officer Hickey returned to appellant's vehicle and advised appellant that he would also receive a driving under suspension citation. Hickey then asked the occupants of appellant's vehicle to exit the vehicle so that Marco could walk around the vehicle.
Marco "indicated" on appellant's vehicle.[1] Officer Hickey then advised appellant that because Marco "indicated," Hickey was going to search the vehicle. Hickey also conducted a pat down search of appellant because, Hickey explained, he thought appellant acted nervously and that Hickey was concerned about his safety.
During appellant's pat down search, Officer Hickey discovered a marijuana smoking device in appellant's pocket and a baggie containing marijuana in his vest. Hickey then searched the vehicle and discovered an ice chest containing marijuana.
After Officer Hickey found the marijuana, appellant indicated that he had been out of state and that he was going to a downtown bar to try to "get rid" of the marijuana. Hickey arrested appellant and transported him to the police station. Appellant's vehicle was seized and taken to the impound lot. Citations for the traffic violations eventually were issued at the police station.
Marietta Police Officer Greg Nohe testified that he interviewed appellant at the police station. Nohe explained that he had been investigating another criminal matter on that evening and that he did not arrive at the police station to interview appellant until approximately 3:30 a.m. Nohe stated that prior to questioning appellant, he advised appellant of his Miranda rights. Nohe testified that during the interview, appellant indicated that appellant intended to dispose of the marijuana at an area bar.
On May 13, 1999, the Washington County Grand Jury returned an indictment charging appellant with one count of preparation of marijuana for sale, in violation of R.C. 2925.07(A). On May 24, 1999, appellant entered a not guilty plea.
On July 26, 1999, appellant filed a motion to suppress evidence. In his motion, appellant argued that the search of his vehicle violated theFourth Amendment. In particular, appellant contended that the officer did not have probable cause to search appellant's vehicle. Appellant also argued that the statements he made to the officers were not voluntary. Appellant asserted that the statements were coerced because the officers promised appellant that "he would get his truck back" if he cooperated.[2]
On September 7, 1999, the trial court held a hearing regarding appellant's motion to suppress evidence. At the hearing, Officer Hickey explained that he searched appellant's vehicle because the drug canine, Marco, indicated on appellant's vehicle.
Officer Nohe testified that after he advised appellant of his Miranda
rights, appellant voluntarily stated that he had planned on disposing of the marijuana at an area bar. Both Officers Nohe and Hickey denied promising appellant anything in return for his cooperation.
Appellant testified that the officers promised appellant that his vehicle would not be forfeited if he cooperated with the officers. Appellant also denied that he told the officers that he had intended to dispose of the marijuana at a local bar.
On September 21, 1999, the trial court concluded that no violation of appellant's Fourth Amendment rights had occurred and denied the motion to suppress evidence. The trial court determined that the officer needed neither reasonable suspicion nor probable cause to walk the canine around appellant's vehicle. The trial court noted that a dog sniffing a vehicle or the occupants does not amount to a search. The trial court further found that once the canine "indicated" on appellant's vehicle, probable cause to search the vehicle arose.
The trial court also denied the motion to suppress appellant's statements. The trial court found that appellant voluntarily gave the statements to the officers. The court determined that appellant had been advised of his Miranda rights and that appellant was not promised, threatened, or coerced into giving the statements.
On November 30, 1999, appellant entered a no contest plea to the charge. On December 23, 1999, the trial court sentenced appellant to five years community control. Appellant filed a timely notice of appeal.[3]
 I
In his first assignment of error, appellant argues that the trial court erred by failing to grant his motion to suppress evidence. Appellant asserts that the trial court improperly concluded that the law enforcement officer did not violate appellant's Fourth Amendment right to be free from unreasonable seizures. Specifically, appellant contends that the length of his detention exceed the scope of the purpose for the initial investigative stop and seizure. Appellant argues that the original purpose of the stop was to give appellant citations for an improper left turn and for driving while under suspension and to issue failure to wear seat belt warnings to the passengers. Appellant therefore asserts that the use of the drug dog went beyond the scope of the original justification for the stop and that Officer Hickey did not have a reasonable suspicion to further detain appellant in order to walk the drug dog around the vehicle.
We initially note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1, 3. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 995;State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584. Accordingly, a reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Dunlap, supra; Long, supra; State v. Medcalf
(1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported. See, generally, Ornelas v. United States (1996),517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.
The Fourth Amendment to the United States Constitution[4] protects individuals against unreasonable governmental searches and seizures. See, e.g., Delaware v. Prouse (1979), 440 U.S. 648, 662, 99 S.Ct. 1391,1400, 59 L.Ed.2d 660. "[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se
unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v.United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. Maumee v. Weisner
(1999), 87 Ohio St.3d 295, 297, 720 N.E.2d 507, 510; Xenia v. Wallace
(1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
A traffic stop initiated by a law enforcement officer implicates theFourth Amendment. See Whren v. United States (1996), 517 U.S. 806, 809,116 S.Ct. 1769, 135 L.Ed.2d 89. Such a traffic stop must comply with theFourth Amendment's general reasonableness requirement. In Whren, the Supreme Court recognized that the Fourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. The court stated:
 "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of `persons' within the meaning of [the Fourth Amendment]. * * * An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. * * *."
Id., 517 U.S. at 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (citations omitted); see, also, Dayton v. Erickson (1996), 76 Ohio St.3d 3,11-12, 665 N.E.2d 1091, 1097-98.
In the case at bar, the parties do not dispute that Officer Hickey observed appellant commit a traffic violation that provided Hickey with a proper constitutional basis to stop and detain appellant and his occupants. Rather, the parties dispute whether the stop's scope and duration expanded beyond that which was necessary to effectuate the original purpose of the stop.
We note that the scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." Floridav. Royer (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229; see, also, State v. Gonyou (1995), 108 Ohio App.3d 369, 372, 670 N.E.2d 1040,1041; State v. Venham (1994), 96 Ohio App.3d 649, 654, 645 N.E.2d 831,834; State v. Birchfield (Aug. 26, 1997), Ross App. No. 97 CA 2281, unreported. The rule set forth in Royer is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime.[5] Gonyou, supra; Sagamore Hills v. Eller (Nov. 5, 1997), Summit App. No. 18495, unreported; see, also Fairborn v. Orrick (1988),49 Ohio App.3d 94, 95, 550 N.E.2d 488, 490 (stating that "the mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer `open season' to investigate matters not reasonably within the scope of his suspicion").
Although the scope of a routine traffic stop is generally limited, in certain instances an officer may validly expand the scope of the stop. See United States v. Brignoni-Ponce (1975), 422 U.S. 873, 881-82,95 S.Ct. 2574, 2580-82, 45 L.Ed.2d 607 (stating that reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop). The officer may expand the scope of the stop and may continue to detain the individual if the officer possesses a reasonable suspicion, based upon articulable facts, that the individual is engaged in criminal activity. See Terry v. Ohio
(1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v.Robinette (1997), 80 Ohio St.3d 234, 685 N.E.2d 762; State v. Chatton
(1984), 11 Ohio St.3d 59, 63, 463 N.E.2d 1237, 1240; State v. Eggleston
(1996), 109 Ohio App.3d 217, 671 N.E.2d 1325; State v. Epling (1995),105 Ohio App.3d 663, 664 N.E.2d 1299; State v. Retherford (1993),93 Ohio App.3d 586, 601, 639 N.E.2d 498, 508. As the court stated inRobinette, paragraph one of the syllabus:
 "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."
Thus, if a law enforcement officer, during a valid traffic stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." Id., 80 Ohio St. 3d at 241, 685 N.E.2d at 768. Consequently, when a law enforcement officer stops an individual for a minor traffic offense, the officer may not generally expand the scope of the stop unless the officer observes additional facts giving rise to a reasonable suspicion of other criminal activity.
In the case at bar, appellant contends that Officer Hickey violated the foregoing Fourth Amendment principles when Hickey decided to walk Marco around appellant's vehicle. We disagree.
First, we note that Officer Hickey had not fulfilled the purpose of the initial stop when he walked Marco around appellant's vehicle. Hickey, at the time he walked Marco around appellant's vehicle, had not yet issued citations for appellant's traffic violations. Thus, at the time in question, appellant remained under a lawful detention. The stop did not last longer than necessary to effectuate the purpose of the stop. SeeRoyer, supra.
Second, we agree with the state and with the trial court that Officer Hickey needed no independent justification for walking the drug canine around appellant's vehicle. The United States Supreme Court has stated that a dog sniff does not constitute a search. United States v. Place
(1982), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110; see, also, Statev. Keller (Jan. 14, 2000), Montgomery App. No. 17896, unreported; Statev. Kennedy (Sept. 30, 1999), Ross App. No. 99 CA 2472, unreported; Statev. Coonrod (Feb. 2, 1999), Washington App. No. 98 CA 2411, unreported. Many Ohio courts have noted that if a legitimate traffic stop is under active investigation, a drug detection dog may be used to determine the presence of illegal drugs. State v. Rusnak (1997), 120 Ohio App.3d 24,696, N.E.2d 633; State v. Carlson (1995), 102 Ohio App.3d 585,657 N.E.2d 591; State v. Bradford (July 8, 1998), Medina App. No. 2752-M, unreported; State v. Anderson (Dec. 13, 1995), Lorain App. No. 95CA6052, unreported; State v. Poole (June 7, 1995), Medina App. No. 2336-M, unreported; State v. Shook (June 15, 1994), Lorain App. No. 93CA5716, unreported; State v. Green (May 14, 1999), Wood App. No. WD-98-068, unreported. Thus, because a dog sniff is not a search, "an officer need not have formed a reasonable suspicion that drug-related activity is occurring in order to request that a drug dog be brought to the scene or to conduct a dog sniff of the vehicle." Keller. Thus, when a motorist is lawfully detained pursuant to a traffic stop and when the purpose of the traffic stop has yet to be fulfilled, the Fourth Amendment is not violated when the officer employs a trained narcotics canine to sniff the vehicle for drugs.
For example, in Keller, the court concluded that no Fourth Amendment violation occurred when an officer lawfully stopped a vehicle for a traffic violation and prior to completing the routine associated with the traffic stop, walked a drug dog around the vehicle. In Keller, the officer had stopped the defendant for a traffic violation. Prior to exiting his cruiser, the officer requested a canine unit dispatched to the scene. Ten to fifteen minutes after the officer had stopped the defendant, the canine unit arrived. The canine alerted to the defendant's vehicle and the officers searched the defendant's vehicle. The officers discovered marijuana and arrested the defendant.
The defendant subsequently filed a motion to suppress evidence. The trial court granted the motion to suppress evidence and the court of appeals reversed. The appellate court noted that:
 "[a]t the time the narcotics trained dog arrived at the scene and performed the sniff of [the defendant's] rented vehicle, [the officer] was still waiting for the results of the driver's license check * * *. Thus, [the defendant] was lawfully detained during the dog sniff test, and his detention was not extended in order to conduct the dog sniff of his car."
In United States v. $409,905 in U.S. Currency (C.A. 8, 1999),182 F.3d 643, the court, similar to the Keller court, found noFourth Amendment violation when the officer walked a narcotics dog around the defendant's lawfully stopped vehicle. In $409,905, the officer stopped the defendant for speeding. The officer obtained the defendant's driver's license and registration and returned to his cruiser. The officer completed the license and vehicle check. Before returning the documents to the defendant, however, the officer advised the defendant that the a narcotics dog would sniff the defendant's vehicle for drugs.
The defendant subsequently challenged the canine sniff. The defendant argued that "the thirty seconds it took [the dog] to circle and alert on the [vehicle] were an unconstitutional detention that tainted the subsequent seizure." Id. at 647. The defendant asserted that "[the officer] unreasonably extended the valid traffic stop by performing the canine sniff without reasonable suspicion after he had decided to return [the defendant's] travel documents and let [the defendant] go on his way." Id.
The court of appeals concluded that the defendant was not illegally detained when the officer walked the canine around his vehicle. The court stated:
 "[W]hen a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigative procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior."
Id. at 649.
Like the situation presented in Keller and in $409,905, in the case at bar Officer Hickey walked Marco around appellant's vehicle before Hickey had completed the routine duties associated with the traffic stop. Hickey had yet to issue citations for appellant's traffic violations. Moreover, Hickey, like the officer in $409,905, had the narcotics canine at his immediate disposal — the canine was located in the back seat of Hickey's police cruiser. See, also, State v. Bolding (May 28, 1999), Erie App. No. E-97-115, unreported (finding no Fourth Amendment violation when officer who had stopped defendant for possible traffic violation walked narcotics dog around defendant's vehicle prior to returning paperwork to defendant).
Appellant cites three cases that he asserts should lead us to conclude that Officer Hickey's conduct in walking the drug dog around the vehicle violated the Fourth Amendment. State v. Gonyou (1995), 108 Ohio App.3d 369,372, 670 N.E.2d 1040, 1041; State v. Correa (1995), 108 Ohio App.3d 362,670 N.E.2d 1035; State v. Retherford (1994), 93 Ohio App.3d 586,639 N.E.2d 498.In Correa, the officer quickly determined that his suspicion that a driver may be under the influence of alcohol was unfounded. The officer, however, improperly continued the roadside detention and began to inquire about the presence of illegal substances. In Retherford, the officer began to inquire about the presence of drugs in a vehicle after the officer had given a traffic citation to the driver and after the reasons for the investigative stop and any prolonged detention had dissipated. These issues differ from the case at bar, however, because in Correa and Retherford the purpose of the investigative stops had been fulfilled and because the detention had been unlawfully prolonged prior to obtaining consent to search. In the casesub judice, we are not confronted with a situation that involves an unlawful detention.
In Gonyou, the Sixth Appellate District held that "manipulative practices" vitiated a driver's consent to search his vehicle. We first note that those "practices" are not present in the instant case and, thus, do not merit discussion in the matter currently before the court. Furthermore, we note that the Sixth Appellate District recently held that a canine sniff which occurs during a traffic stop does not, absent an unduly prolonged detention, violate the Constitution. See State v.Boling (May 28, 1999), Erie App. No. E-97-115, unreported.
We further add that the subsequent search of appellant's vehicle did not run afoul of the Fourth Amendment. The smell of marijuana, alone, provides probable cause to search the vehicle.[6] Keller ("Once a narcotics trained dog alerts to the presence of contraband, probable cause exists for a further search of the vehicle."). Thus, in the case at bar once the canine indicated the presence of drugs in appellant's lawfully stopped vehicle, the law enforcement officer possessed probable cause to search appellant's vehicle. Once equipped with probable cause to believe that appellant's vehicle contained contraband, Officer Hickey validly searched appellant's vehicle pursuant to the well-established automobile exception to the warrant requirement. See Maryland v. Dyson
(1999), 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442; Moore,supra.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant argues that the trial court erred by failing to suppress the statements that appellant gave to the law enforcement officers during the traffic stop and during his interview at the police station. Appellant asserts that the officers advised him that he may get to keep his truck if he cooperated. Appellant argues that the officers used coercive tactics to obtain appellant's statements and that the totality of the circumstances demonstrate that his confession was not voluntary.
The rule set forth in Miranda v. Arizona (1966), 384 U.S. 436, 478,86 S.Ct. 1602, 16 L.Ed.2d 694, protects an individual who "is taken into custody or otherwise deprived of his freedom by the authorities in any significant way" from jeopardizing his Fifth Amendment privilege against self-incrimination. Specifically, the Miranda rule provides:
 "* * * The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."
Id., 384 U.S. at 444, 86 S.Ct. 1602, 16 L.Ed.2d 694.
In the case at bar, no dispute appears that appellant was properly advised of his Miranda rights. The remaining question is whether appellant voluntarily gave the statements to the officers.
For a defendant's inculpatory statements to be admissible at trial, it must appear that the defendant gave the statements voluntarily. See Statev. Chase (1978), 55 Ohio St.2d 237, 246, 378 N.E.2d 1064, 1070. "Evidence of police coercion or overreaching is necessary for a finding of involuntariness, and not simply evidence of a low mental aptitude of the interrogee." State v. Eley (1996), 77 Ohio St.3d 174, 178, 672 N.E.2d 640,646; see, also, Colorado v. Connelly (1986), 479 U.S. 157, 164,107 S.Ct. 515, 93 L.Ed.2d 473; State v. Hill (1992), 64 Ohio St.3d 313,318, 595 N.E.2d 884, 890. Furthermore, in determining the voluntariness of an accused's confession, the court must employ the "totality of the circumstances" test. See State v. Bays (1999), 87 Ohio St.3d 15, 22,716 N.E.2d 1126, 1136; Eley, 77 Ohio St.3d at 178, 672 N.E.2d at 646;State v. Clark (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854.
Under the "totality of the circumstances" test, the reviewing court should consider: (1) the age, mentality, and prior criminal experience of the individual; (2) the length, intensity, and frequency of the interrogation; (3) the existence of physical deprivation or mistreatment; and (4) the existence of threat or inducement. See Bays,supra; State v. Edwards (1976), 49 Ohio St.2d 31, 40, 358 N.E.2d 1051,1059.
In the case at bar, the totality of the circumstances demonstrate that appellant voluntarily gave his statements to the law enforcement officers. Although appellant complains that the officers used coercive tactics by promising appellant that appellant's vehicle would be returned if he cooperated, the trial court specifically discredited appellant's claim. The trial court found that the officers made no promises to appellant in order to secure appellant's statements. We will not disturb the trial court's factual finding. See Dunlap, supra.
Moreover, although appellant waited approximately four hours in the police station, we do not believe that the wait, standing alone, impaired his ability to understand the import of giving the officers the incriminating statements. Cf. State v. Cowans (1967), 10 Ohio St.2d 96,101, 227 N.E.2d 201, 205 (four hour interrogation, yet the court found that the length of the interview did not deprive the defendant of his rational faculties and that he continued, throughout the interview, to be cognizant of his choice to confess or not confess); Haynes v. Washington
(1963), 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (sixteen hour interview); Harris v. South Carolina (1949), 338 U.S. 68, 69 S.Ct. 1354,93 L.Ed. 1815 (three days); Turner v. Pennsylvania (1949), 338 U.S. 62,69 S.Ct. 1352, 93 L.Ed. 1810 (five days); Ashcraft v. Tennessee (1944),322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (thirty-six hours).
Furthermore, nothing in the record indicates that appellant's age or mentality rendered him unable to understand the significance of speaking to the law enforcement officers. Therefore, we agree with the trial court's conclusion that the totality of the circumstances demonstrate that appellant voluntarily gave his statements to the law enforcement officers.
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, P.J. Evans, J.: Concur in Judgment Opinion
 ___________________________ Peter B. Abele, Judge
[1] Hickey explained at the motion to suppress hearing that when Marco "indicates," Marco has detected narcotics inside the vehicle. When Marco indicates, Marco sits and stares at the vehicle.
[2] The indictment included a forfeiture specification.
[3] We note that on December 14, 1999, appellant filed a premature notice of appeal. On December 23, 1999, the trial court sentenced appellant. On December 27, 1999, appellant filed an amended notice of appeal.
[4] The Fourth Amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Section 14, Article I of the Ohio Constitution also protects individuals from unreasonable searches and seizures. The section provides:
 The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.
In the case sub judice, we note that appellant has brought his challenge to the officer's actions under the United States Constitution only.
[5] In Gonyou, 108 Ohio App.3d at 372, 670 N.E.2d at 1042, the court summarized the circumstances under which the continued detention may constitute an illegal "fishing expedition":
 "Various activities, including following a script, prolonging a traffic stop in order to `fish' for evidence, separating an individual from his car and engaging in `casual conversation' in order to observe `body language' and `nervousness,' have been deemed (depending on the overall facts of the case) to be manipulative practices which are beyond the scope of * * * `* * * the purpose for which the stop was made.' State v. Correa (1995), 108 Ohio App.3d 362, 670 N.E.2d 1035, 1039."
[6] Recently, in State v. Moore (2000), 90 Ohio St.3d 47, 734 N.E.2d 804, the Ohio Supreme Court held that the smell of marijuana alone justifies a search of the vehicle.