The STATE of Ohio, Appellee,

v.

CORREA, Appellant.

[Cite as *State v. Correa* (1995), 108 Ohio App.3d 362.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–104.

Decided Dec. 22, 1995.

**364**

[redacted]

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, and *Bruce J. Sorg,* Assistant Prosecuting Attorney, for appellee.

*Jon D. Richardson,* for appellant.

---

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which denied appellant's motion to suppress evidence that was seized in a search of the auto he was driving when he was stopped for a suspected traffic violation.

Appellant sets forth the following assignment of error:

"The trial court erred to defendant-appellant's prejudice by overruling his motion to suppress."

The undisputed facts that are relevant to the issues raised on appeal are as follows. On November 7, 1994, at approximately 12:15 a.m., Trooper William Stidham of the Ohio State Highway Patrol was observing traffic on Interstate 80 near Swanton when he saw a car that was traveling noticeably under the speed limit and weaving slightly out of its lane. Just as Stidham pulled onto the road to follow the car, the driver turned into a rest area. Stidham followed the car and signalled to the driver to pull over. As Stidham walked up to the stopped car he observed appellant behind the wheel and another person in the front passenger seat. He asked appellant for his driver's license and registration and then asked him to step out and stand behind the car. Approximately two minutes later, Trooper Tim Stockman arrived on the scene with his trained narcotics dog. Stidham and Stockman questioned appellant as to where he had been and where he was going. Stidham then patted down appellant and placed him in the rear of the patrol car while he ran a check of his criminal history. While Stidham was doing that, Stockman walked back to the stopped car and spoke with the passenger, after which he reported to Stidham that he had received conflicting information as to their destination. At that point, while Stidham was still waiting for a response to come over the radio, the troopers decided that Stockman would walk his dog around appellant's car. When the dog "alerted" at the passenger door of the car, the passenger was asked to step out and was patted down and placed in the patrol car with appellant. Stockman then searched the interior of

the car and found two bundles of marijuana under the front seat. Appellant and his passenger were then handcuffed, advised of their *Miranda* rights and searched.

On December 2, 1994, appellant was indicted and charged with trafficking in marijuana in violation of R.C. 2925.03(A)(4). On December 27, 1994, appellant filed a motion to suppress and on January 6, 1995, a hearing was held on the motion.

As part of his testimony at the motion hearing, Trooper Stidham stated that he had received training in drug interdiction and is a part of the Ohio State Highway Patrol's drug interdiction team. He testified that, as part of drug interdiction training, officers are taught to look for various indicators of drug involvement such as travel to or from "source drug states and user drug states," conflicting stories between occupants of a vehicle, and certain behaviors such as nervousness and lack of eye contact. Stidham stated further that looking for information from which he might form a reasonable articulable suspicion of drug activity is "an agenda * * * done during the course of our duties every day" and that "I write citations as I'm looking for indicators to find narcotics."

As to his observation of appellant's vehicle, Stidham testified that when he first saw it he suspected that the driver was either intoxicated or very tired and decided to pull the car over to determine which was the case. He stated that he called the stop in to the Toledo patrol post, which is standard procedure, but did not call for assistance. Stidham testified that due to "the way that they were acting," he asked appellant to step out of the car while he talked to him. At that time appellant told him that he was very tired and had pulled into the rest area to sleep. Stidham said that after watching appellant get out of the car and talking to him he was satisfied that he was not intoxicated and that his explanation that he was merely tired made sense. Stidham stated further, however, that "after talking to Mr. Correa and Mr. Pedrazza and noticing the nervousness, the conflicting stories, I felt that there was possibly something there more than just a traffic violator" and that they therefore decided to walk the dog around the car.

Trooper Stockman also testified as to his training as part of the Ohio State Highway Patrol drug interdiction team. He stated that as part of that training officers are taught to look for certain signs such as nervousness, certain body movements, lack of eye contact and conflicting statements between occupants of a car which might indicate the transportation of illegal drugs.

On April 3, 1995, the trial court denied appellant's motion to suppress. In its decision filed May 3, 1995, the trial court found that the initial stop and subsequent actions of the officers were not pretextual, that the detention was lawful, and that "the officers obtained probable cause to search the car during the lawful detention."

In his sole assignment of error, appellant asserts that the officers violated appellant's constitutional rights when they converted a routine traffic stop into a "fishing expedition" for evidence of drug trafficking by conducting their interaction with appellant and his passenger in a manner that was aimed solely at creating circumstances which would give rise to a reasonable, articulable suspicion of drug activity.

Appellee responds that when appellant and his passenger appeared nervous and then gave conflicting stories as to their destination, the officers were justified in having reasonable suspicion that they were involved in criminal activity. Appellee responds further that because there was no attempt on the part of the officers to detain appellant beyond the time necessary for a routine traffic stop and a check of appellant's driver's license and possible criminal history, the detention was reasonable.

To justify an investigatory detention, a police officer must demonstrate specific and articulable facts which when considered with the rational inferences therefrom would, in light of the totality of the circumstances, justify a reasonable suspicion that the individual who is stopped is involved in illegal activity. See *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. The standard for reviewing such police conduct is an objective one: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *State v. Williams* (1990), 51 Ohio St.3d 58, 60, 554 N.E.2d 108, 111, citing *Terry, supra.* Stopping an automobile and detaining its occupants does constitute a "seizure" within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution, even when the purpose of the stop is limited and the resulting detention brief. *Delaware v. Prouse* (1979), 440 U.S. 648, 653, 99 S.Ct. 1391, 1395–1396, 59 L.Ed.2d 660, 667, citing *United States v. Martinez–Fuerte* (1976), 428 U.S. 543, 556–558, 96 S.Ct. 3074, 3082–3083, 49 L.Ed.2d 1116, 1127–1128; *United States v. Brignoni–Ponce, supra,* 422 U.S. at 878, 95 S.Ct. at 2578–2579, 45 L.Ed.2d at 614–615, and *Terry, supra,* 392 U.S. at 16, 88 S.Ct. at 1877, 20 L.Ed.2d at 902–903. Such an investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–1326, 75 L.Ed.2d 229, 238.

In this case it is clear that (a) the trooper did justify the initial stop by setting forth articulable facts which gave rise to a reasonable suspicion that appellant

may have been driving while under the influence of alcohol, and (b) the amount of time that expired between the initial stop and when the marijuana was found was not necessarily beyond that which would have been reasonable for a routine traffic stop. What is at issue in this case, however, is whether the scope of the troopers' inquiry exceeded that which was constitutionally permissible once they determined that appellant was not operating a motor vehicle while under the influence of alcohol.

The Ohio Supreme Court considered such a question in *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237, which was circumstantially very similar to the case before us. In *Chatton,* the police stopped a car for failure to display license plates. As the officer approached the car, however, he saw a temporary license tag lying on the rear deck beneath the window. The officer requested that Chatton produce his driver's license and returned to the patrol car to conduct a computer check of the validity of the license. When the officer was informed that the license had been suspended, he placed Chatton under arrest. During the course of a subsequent search of the passenger compartment of the car, the officer found a loaded revolver. Chatton moved to suppress the evidence of the gun on the basis that the search of his car was unlawful. The trial court denied the motion and Chatton pled no contest. The court of appeals reversed his conviction, finding that any reasonable suspicion that Chatton was violating the law was extinguished when the officer saw the temporary tag and that any detention beyond that point was unlawful. In affirming the judgment of the court of appeals, the court stated, 11 Ohio St.3d at 63, 11 OBR at 253, 463 N.E.2d at 1240:

"In our view, because the police officer no longer maintained a reasonable suspicion that appellee's vehicle was. not properly licensed or registered, to further detain appellee and demand that he produce his driver's license is akin to the random detentions struck down by the Supreme Court in *Delaware v. Prouse* [440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ] * * *."

In *State v. Smotherman* (July 29, 1994), Wood App. No. 93WD082, unreported, 1994 WL 395128, this court recently noted a certain similarity in the "patterns and practices" of the officers in that case and in numerous other "Ohio cases" which led to the conclusion that they are following a "script" suggested in their drug interdiction training, which calls for prolonging a traffic stop to "fish" for evidence of drug activity and seek consent to search the vehicle well after the stop should have been terminated. This court noted further that the practices of separating an individual from his car and engaging the individual in "casual conversation" in order to observe "body language" and "nervousness" are commonly implemented by officers trained in drug interdiction. See *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498; *State v. Medina* (Apr. 13, 1994),

Montgomery App. No. 13883, unreported, 1994 WL 124807; *State v. Pinder* (Dec. 15, 1993), Miami App. No. 93–CA–6, unreported, 1993 WL 518692; *State v. Foster* (1993), 87 Ohio App.3d 32, 621 N.E.2d 843. Upon consideration thereof, this court determined in *Smotherman* that the above practices are "manipulative" and that:

"Reasonable suspicion that a detainee is engaged in criminal activity must exist for as long as the detention does. *The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime.* State v. Bevan [ (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099, 1101–1102]." (Emphasis added.)

It is not in dispute in this case that Trooper Stidham had reasonable cause to stop appellant and determine whether he was intoxicated or just tired. As set forth above, however, Stidham testified that he was satisfied with appellant's explanation that he was very tired and that appellant was not under the influence of alcohol shortly after he stopped appellant's car. As to the state's focus on the fact that from the time of the stop until the time the dog was walked around the car only a few minutes passed, such timing, while impressive, does not eliminate the need to examine the scope of the officer's inquiry.

The determination of whether an individual's Fourth Amendment rights were abridged must not be reduced to a simple analysis of how much or how little time passed during the course of a detention. As set forth above, the detention must be "no longer than is necessary to effectuate the purpose of the stop." *United States v. Brignoni–Ponce, supra,* 422 U.S. at 881–882, 95 S.Ct. at 2580–2581, 45 L.Ed.2d at 616–617. That is, to be constitutional the detention is limited not just in time but, as well, to the fulfillment of the purpose for which the stop was made.

Upon consideration of the evidence that was before the trial court at the hearing on the motion to suppress and the law as set forth above, this court finds that (a) once Trooper Stidham determined that appellant was not violating the law by driving while under the influence of alcohol there was no longer any justification for continuing the detention; see *Chatton, supra;* (b) the "drug interdiction" procedures that were thereafter employed by the troopers were for the purpose of providing them with an opportunity to "fish" for evidence of drug activity that would be sufficient to justify a search of the vehicle, see *Smotherman, supra;* and (c) that portion of Trooper Stidham's inquiry which occurred after he determined that appellant was not driving while under the influence of alcohol went beyond the scope of that which was necessary to effectuate the purpose of the stop and was therefore outside the bounds of a constitutionally permissible detention.

Accordingly, this court finds that the trial court erred in finding that "the officers obtained probable cause to search the car during [a] lawful detention" and appellant's sole assignment of error is well taken.

On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to the trial court for further proceedings not inconsistent with this decision. Court costs of this appeal are assessed to appellee.

*Judgment reversed.*

ABOOD, P.J., HANDWORK and SHERCK, JJ., concur.