OPINION
Defendant-appellant Gary Ramsey appeals the denial by the Ashland County Court of Common Pleas of defendant-appellant's Motion to Suppress. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On April 30, 1999, the Ashland County Grand Jury indicted appellant on one count of carrying a concealed weapon in violation of R.C. 2923.12 (A), a felony of the fourth degree. At his arraignment on May 5, 1999, appellant entered a plea of not guilty to the charge contained in the indictment. Thereafter, a Motion to Suppress was filed by appellant on June 9, 1999. Appellant, in his motion, specifically alleged that the police officers who arrested him lacked probable cause to search appellant and that, therefore, the .38 caliber gun found on his person should be suppressed. Appellee filed a memorandum in response to appellant's motion on June 29, 1999. The following evidence was adduced at the June 29, 1999, suppression hearing. Sergeant Michael Bammann is a supervisor in the City of Mansfield's special investigative unit. As part of his duties, Sergeant Bammann also works with the METRICH Drug Enforcement Task Force. On April 26, 1999, Sergeant Bammann received information that Hansey McDowell, a black male who Bammann had been investigating for suspected drug-related activity for several months, might be at a trailer at the main campground at Charles Mill Lake. The trailer was registered in Hansey McDowell's name. A ranger at the lake previously had relayed to Sergeant Bammann "some information reference to suspected drug activity at that trailer." Transcript of Proceedings at 11. For such reason, Sergeant Bammann contacted Hansey McDowell's probation officer, Pam Grimes, who told him that she was revoking McDowell's probation and intended to arrest McDowell on a probation violation. That night, Sergeant Bammann, who could recognize McDowell, and Probation Officer Pam Grimes went out to the campground at Charles Mill Lake in hopes of apprehending McDowell. While Sergeant Bammann's vehicle was located near the front of the park, Detective Dean Sgambellone was in an unmarked vehicle one road away from the trailer. During the surveillance of the trailer, Detective Sgambellone radioed Sergeant Bammann and told him that a 1991 Cadillac driven by a white male and containing a black male passenger was leaving the area of the trailer. Detective Sgambellone was not familiar with McDowell. After the Cadillac left the main gate of the campground, Sergeant Bammann followed the vehicle and radioed for backup assistance from marked units from Richland County. At the suppression hearing, Sergeant Bammann testified that he wanted to make a "car stop" of the Cadillac since he "believed that the black male was Hansey McDowell. We had the [bench] warrant to arrest him." Transcript of Proceedings at 14. When asked why he believed that McDowell was in the Cadillac, Sergeant Bammann testified "that was the only information I had that Hansey McDowell would be the only other black male down there at that time. I had no idea who else may be there." Id. While following the Cadillac, Sergeant Bammann was unable to get close enough to the same to determine whether the passenger was, in fact, Hansey McDowell. At the hearing, Sergeant Bammann further testified that even before the Cadillac left the park, he knew it belonged to Dan McDowell, Hansey McDowell's brother. When the Cadillac arrived at a convenience store in the Village of Mifflin, the black male passenger exited the vehicle. Sergeant Bammann's vehicle also pulled into the store approximately twenty feet behind the Cadillac. As Sergeant Bammann was getting out of his vehicle, he knew that the passenger in the Cadillac was not Hansey McDowell but rather Dan McDowell, Hansey McDowell's brother. Sergeant Bammann then approached both occupants of the Cadillac, identified himself as a police officer and asked the two occupants to "stay there for a second" while he awaited back up assistance. Transcript of Proceedings at 16. Once a Richland County deputy arrived on the scene approximately five minutes later, both occupants of the Cadillac were asked to produce identification. After identification was produced, it was discovered that there was an active warrant for appellant, who was the driver of the Cadillac. Sergeant Bammann then arrested appellant and proceeded to conduct a custodial search of his person. The search yielded a .38 loaded revolver in appellant's pants pocket. As Sergeant Bammann handed the confiscated revolver to a deputy, Dan McDowell, the passenger in the Cadillac, told Bammann that he also had a gun. After such gun was secured, Dan McDowell also was placed under arrest. The Cadillac subsequently was towed by the Richland County Sheriff's Department. At the conclusion of the suppression hearing, the trial court overruled appellant's Motion to Suppress stating, in part, as follows: "The Court is going to make the following determinations with respect to this determinative issue from a factual standpoint. The court is going to find that the officer did have reasonable suspicion based upon the following: That Hansey McDowell might be concealed in the back seat of the car. The prior information that the officer had with regard to potential drug activity occurring by these parties at the campground just a few miles away. And that this officer did know this defendant to be Hansey McDowell's brother, and that there might be Hansey McDowell himself present in the vehicle somewhere.
Given the short time of the detention here of two to five minutes, which is undisputed under the facts, the court is finding that the officer's conduct was reasonable under the circumstances . . ."
Transcript of Proceedings at 60. The trial court's findings were memorialized in a Judgment Entry filed on July 21, 1999. Thereafter, on July 23, 1999, appellant entered a plea of no contest to the charge of carrying a concealed weapon in violation of R.C. 2923.12 (A), a felony of the fourth degree. A written "Waiver of Constitutional Rights and Plea of No Contest" signed by appellant was filed on August 3, 1999. Subsequently, on October 25, 1999, appellant was sentenced to fifteen months in prison and ordered to pay a fine in the amount of $2,500.00. A Judgment Entry memorializing appellant's sentence was filed on October 29, 1999. It is from the trial court's October 29, 1999, Judgment Entry that appellant prosecutes his appeal, raising the following assignment of error:
 THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FINDING THAT THE SEARCH OF DEFENDANT WAS PROPER.
 STANDARD OF REVIEW
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993)86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v Curry (1994), 95 Ohio App.3d 93,96, State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." I Appellant, in his sole assignment of error, challenges the trial court's denial of appellant's Motion to Suppress. Appellant specifically contends that the officers in the case sub judice had no reasonable, articulable suspicion to further detain appellant once it was determined that appellant was not Hansey McDowell and, therefore, was not the subject of the bench warrant. Appellant further asserts that his detention and subsequent search by the officers violated theFourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. We agree. TheFourth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, . . ." Section 14, Article I of the Ohio Constitution also guarantees the right of the people to be free from unreasonable searches and seizures. Accordingly, the government is prohibited from subjecting individuals to unreasonable searches and seizures. Delaware v. Prouse (1979),440 U.S. 648. The detention of an individual by a law enforcement officer does not violate the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution if there are, at the very least, "specific and articulable" facts indicating that detention was reasonable. See State v. Chatton (1984), 11 Ohio St.3d 59, 61 and Terry v. Ohio (1968), 392 U.S. 1, 21-22. To justify an investigatory detention, a law enforcement officer must "demonstrate specific and articulable facts which when considered with the rational inferences therefrom would, in light of the totality of the circumstances, justify a reasonable suspicion that the individual who is stopped is involved in illegal activity." State v. Correa (1995), 108 Ohio App.3d 362, 366. See also Terry, supra. "The scope and duration of the investigative stop must last no longer than is necessary to effectuate the purpose for which the initial stop was made." State v. Bevan (1992), 80 Ohio App.3d 126, 129, citing to Chatton, supra. In the case sub judice, we find that once Sergeant Bammann determined that the passenger in the Cadillac was not Hansey McDowell, the officers did not have any specific and articulable facts to support a reasonable suspicion of criminal activity by appellant and to justify appellant's further detention. As is stated above, Sergeant Bammann had been investigating a black male named Hansey McDowell for several months based on reports of drug activity. On April 26, 1999, Sergeant Bammann, who testified that he knew what Hansey McDowell looked like and had seen him personally before, received information that Hansey McDowell might be at a trailer at the main campground of Charles Mill Lake that was registered in Hansey McDowell's name. In order to apprehend Hansey McDowell on a bench warrant, both Sergeant Bammann and Detective Sgambellone engaged in surveillance of the campground and trailer. During the surveillance, Detective Sgambellone, who was not familiar with Hansey McDowell, radioed the Sergeant and told him that a 1991 Cadillac "was leaving with a white male driver and a black male passenger." Transcript of Proceedings at 13. Sergeant Bammann then proceeded to follow the Cadillac, which he knew belonged to Dan McDowell, since Sergeant Bammann believed the black male passenger was Hansey McDowell. When the Cadillac pulled into a convenience store, Sergeant Bammann pulled up approximately twenty feet behind the Cadillac. At the suppression hearing, Sergeant Bammann testified as follows: Q. Now you're stating that when you finally pulled over — didn't pull over. When you finally made contact with the individuals, you knew immediately that that was Dan McDowell getting out of the passenger's seat? A. After he had got around to the back of the car and got a good look at him, yes. Q. That's before you even got out of your vehicle? A. That was as I got out of my vehicle. Q. And as you walked up to the vehicle, you never looked in the back seat? A. Not until the marked units got there, no. Q. This whole time, were you standing — before the marked units got there, you were standing behind your open door of your truck; is that correct? A. I moved to like the left front corner of my truck, but I was still about 20 feet back from the car. Q. You're behind the open door of your truck, though, correct? A. When I first got out of my truck, I left the door open. But I moved around in front of the door. I was in plain sight of anybody that wanted to see me. Q. You recognized it was Dan McDowell even before you drew your badge? A. About the same time possibly. I really wasn't focusing on his face. I was trying to watch the whole car.
Transcript of Proceedings at 27-28. Sergeant Bammann then proceeded to identify himself as a police officer to the vehicle's occupants asking them to "stay there for a second" while waiting for the back up units to arrive. Transcript of Proceedings at 16. Appellant testified that he did not feel free to go. Once the back up units arrived approximately five minutes later, Sergeant Bammann checked appellant's identification and discovered that there was an outstanding bench warrant for his arrest. Following a pat down search, Sergeant Bammann located a .38 revolver in appellant's hip pocket and arrested appellant. There is no question in the case sub judice that appellant was seized since Sergeant Bammann's conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. See Michigan v. Chesternut (1988) 486 U.S. 567. As is stated above, Sergeant Bammann told appellant and Dan McDowell to remain at the convenience store while Bammann waited for backup assistance. Clearly, under the circumstances, appellant would not have felt free to walk away and go about his business. Furthermore, based on the facts as set forth above, we find that the seizure of appellant was illegal since Sergeant Bammann lacked an articulable and reasonable suspicion that appellant had engaged in drug activity or otherwise violated the law at the time appellant was detained and asked to produce identification. Once Sergeant Bammann realized that the passenger in the Cadillac was not Hansey McDowell but rather his brother, Dan, the purpose for which the initial stop of appellant was made was realized. While Sergeant Bammann testified that he detained appellant and his passenger because "possibly Hansey McDowell could be laying in the back seat or concealing himself in the car," he had previously been advised by Detective Sgambellane, that a Cadillac with two individuals was leaving the area of the trailer. Transcript of Proceedings at 17. Thus, Sergeant Bammann had no reasonable suspicion that Hansey McDowell was hidden in the car. By detaining appellant beyond the time of his identification, the scope and duration of the investigative stop lasted longer than was necessary "to effectuate the purpose of which the initial stop was made." Bevan, supra at 129. The continued detention of appellant then became an illegal seizure. See State v. Robinette (1997), 80 Ohio St.3d 234. Consequently, the subsequent pat-down search of appellant's person violated his Fourth Amendment rights and any evidence obtained from the same should have been suppressed. For the foregoing reasons, we find that the trial court erred in overruling appellant's Motion to Suppress.
Accordingly, appellant's sole assignment of error is sustained. The judgment of the Ashland County Court of Common Pleas is reversed and this matter is remanded for further proceedings.
By Edwards, J. Farmer, P.J. and Wise, J. concurs