[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} On or about May 15, 2001, defendant, Ronald L. Gillenwater, II, was indicted by a Franklin County Grand Jury for possession of cocaine in violation of R.C. 2925.11. Defendant pled not guilty and filed a motion to suppress testimony that he was found in possession of crack cocaine, arguing that his constitutional rights had been violated by the police officer who searched him. Defendant's motion to suppress was denied, and, after a two-day trial, defendant was convicted by a jury as charged in the indictment. He was subsequently sentenced to six months in prison. Defendant now appeals the February 21, 2002 entry of judgment by the Franklin County Court of Common Pleas, presenting the following three assignments of error for review:
 {¶ 2} "[1.] The lower court's denial of defendant's motion to suppress was error and in violation of the defendant's constitutional rights.
 {¶ 3} "[2.] Due process requires that the defendant be afforded a hearing before a neutral and detached hearing officer, which the defendant did not get.
 {¶ 4} "[3.] It was error for the court to allow the prosecutor to indirectly comment on the defendant's failure to testify and or produce contrary evidence."
 {¶ 5} On February 24, 2001, defendant was stopped by Columbus police officers, Brian Lamarre and James Haley, as he was crossing East Eighth Avenue at the intersection of Eighth Avenue and an unmarked alley, which is situated between North Fourth Street and Cameron Street.
 {¶ 6} At trial, Officer Lamarre testified that on February 24, 2001, he was working second shift with Officer Haley in a marked police van. They were patrolling Four Precinct, an area which includes the Short North area of Columbus, including Eighth Avenue. Officer Lamarre testified that as they drove on East Eighth Avenue between North Fourth and Hamlet Street, they watched defendant cross Eighth Avenue as he walked from the north to the south side of the street.
 {¶ 7} According to Officer Lamarre, defendant failed to use a "marked" crosswalk. However, when questioned on cross-examination, Officer Lamarre stated that all intersections, even those that are not officially marked, are lawful crosswalks, and that the nearest intersection where "there would have been an appropriate crosswalk" was "[a]pproximately two hundred feet" away. (Tr. 44.) Thus, it is unclear from the record whether defendant crossed at an intersection which was not officially marked as a crosswalk, which according to Officer Lamarre would have been proper, or whether defendant crossed Eighth Avenue approximately 200 feet from any intersecting roadway.
 {¶ 8} In any event, having concluded that defendant had just committed the offense of "jaywalking," Officers Lamarre and Haley approached the defendant in order to issue him a citation for that offense. According to Officer Lamarre, the events occurred as follows. As he and Officer Haley drove up beside defendant as he walked along the sidewalk, Officer Lamarre exited the vehicle and addressed defendant, explaining to him that he was going to issue him a citation. He then asked defendant to return to the van with him.
 {¶ 9} As he and defendant returned to the van, Officer Lamarre claimed that defendant, without inducement, initiated a conversation telling Officer Lamarre the location of the property he had just left. According to Officer Lamarre, the address of that property was 228 East Eighth Avenue, a residence located in a known drug area. Upon hearing that, Officer Lamarre testified that he asked defendant whether he visited someone at that location or had a friend who lived there. According to Officer Lamarre, defendant then voluntarily, and without further questioning or provocation, responded that he "was looking to get hooked up." (Tr. 46.)
 {¶ 10} In response, Officer Lamarre asked defendant if he was in the area in order to buy crack cocaine. Purportedly, defendant readily admitted that he was looking for some crack, but that "they didn't have any." Id. According to Officer Lamarre, he then asked defendant if he had any drugs on his person, to which defendant adamantly responded that he did not and, further, that the officer could "check" if he wished. (Tr. 47.) Officer Lamarre then secured defendant, and during the course of searching defendant's person, found a very small amount of crack cocaine, weighing 0.2 grams, in the small "coin pocket" of defendant's jeans. (Tr. 48.) After conducting a field test of the substance, Officer Lamarre placed defendant under arrest.
 {¶ 11} The second individual called to testify was Officer Haley. Officer Haley confirmed that he and Officer Lamarre stopped defendant for the offense of "jaywalking." Although he remained in the vehicle and apparently did not speak with defendant, Officer Haley testified that he could see Officer Lamarre and defendant talking, and was allowed to testify that he heard defendant consent to being searched. He also testified that crack cocaine was found in the possession of defendant, and that defendant was subsequently arrested.
 {¶ 12} The last witness called to testify was Ms. Angela Farrington, a criminalist employed by the Columbus Police Crime Laboratory. Ms. Farrington testified that the substance recovered from defendant was tested according to standard procedure and was found to be cocaine with a total weight of 0.2 grams.
 {¶ 13} After counsel had concluded their closing arguments, the jury was instructed by the trial court, and adjourned to chambers for deliberation. Shortly thereafter, the jury returned a verdict finding defendant guilty as charged.
 {¶ 14} In his first assignment of error, defendant argues that the trial court erred when it failed to grant his pretrial motion to suppress. Defendant's motion to suppress was heard by the court immediately prior to trial. Two witnesses testified during the course of the hearing of that motion, Officer Lamarre and the defendant.
 {¶ 15} While Officer Lamarre's testimony regarding the events leading up to defendant's arrest are consistent with the testimony given by the officer at trial, the defendant, who did not testify at trial, set forth a very different sequence of events.
 {¶ 16} According to defendant, he did, in fact, cross from the north side of Eighth Avenue to the south, at the intersection of Eighth Avenue and an unnamed alley. (Tr. 21.) As he did so, he heard the police van turn around in the alley. He continued walking at a normal pace toward the corner of Eighth Avenue and Fourth Street, when the van pulled up beside him. According to defendant, the van had not yet come to a complete stop before Officer Lamarre had jumped out and grabbed him forcefully by the wrists, placing his arms behind his back and putting him on the ground. As he did so, Officer Lamarre asked, "[w]hat are you doing in this neighborhood," and immediately started searching defendant's clothing. (Tr. 22, 24-25.) During the search, Officer Lamarre found the cocaine in the pocket of defendant's jeans. Defendant was then handcuffed and placed in the back of the van, while the officers performed a field test on the substance taken from him.
 {¶ 17} Defendant specifically testified that he did not illegally cross Eighth Avenue, but that he crossed at the corner of an alley. He also testified that no mention of jaywalking was made until after he was apprehended, searched, cuffed, placed in the back of the van, and until after the field test was performed. When asked by the trial court specifically when the search was conducted, defendant again confirmed that Officer Lamarre started searching him as soon as he grabbed defendant's arms, placing them behind his back. Once he did so, defendant claimed that Officer Lamarre began patting him down, reaching into his pockets and feeling around the waist of his pants.
 {¶ 18} After testimony and oral argument had concluded, the trial court stated:
 {¶ 19} "There's only one issue in the case; that is, who does the court believe. Based upon all the factors taken into judging the credibility of the witnesses and your obvious interest and bias, just being released from the penitentiary, being at a halfway house, knowing the ramifications of what another drug conviction could be, I have a tendency at this point in time to believe the police officer, not defendant.
 {¶ 20} "So I will overrule the motion to suppress." (Tr. 33.)
 {¶ 21} Defendant did not request further findings of fact or conclusions of law beyond those set forth by the trial court in the trial transcript.
 {¶ 22} A motion to suppress is a device used to eliminate from trial evidence which has been secured illegally; generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self-incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation, etc.), of the United States Constitution, and/or accompanying provisions of the Ohio State Constitution.
 {¶ 23} The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated." Section 14, Article I of the Ohio Constitution also guarantees the right of the people to be free from unreasonable searches and seizures. However, the detention of an individual by a law enforcement officer does not violate the Fourth Amendment to the United States Constitution, nor Section 14, Article I of the Ohio Constitution, if there are "specific and articulable" facts indicating that the detention was reasonable. State v. Chatton (1984), 11 Ohio St.3d 59, 61, and Terry v. Ohio (1968),392 U.S. 1, 21-22, 88 S.Ct. 1868.
 {¶ 24} When a search is conducted without a warrant, it is per se unreasonable, subject only to a few specific exceptions. Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507. When a search is conducted without a warrant, the prosecution bears the burden of proving the facts that justify the validity of the search under one of the recognized exceptions. Athens v. Wolf (1974), 38 Ohio St.2d 237.
 {¶ 25} There are at least three methods of challenging a trial court's adverse ruling on a motion to suppress. First, a party may challenge the trial court's findings of fact. In reviewing a challenge of this nature, the reviewing appellate court must determine whether the findings are legitimate, or whether they stand against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; and State v. Guysinger (1993), 86 Ohio App.3d 592.
 {¶ 26} Second, a party may argue that the trial court failed to apply the appropriate test or the correct law to the court's findings of fact. In that case, the reviewing court may reverse the ruling of the trial court if it has committed an error of law. See State v. Williams (1993), 86 Ohio App.3d 37.
 {¶ 27} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence, and that it has also properly applied the law, an appellant may argue that the court has incorrectly decided the precise issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts of the case meet the appropriate legal standard. State v. Curry (1994), 95 Ohio App.3d 93, 96, and State v. Claytor (1993),85 Ohio App.3d 623, 627.
 {¶ 28} At a suppression hearing, the evaluation of the evidence presented, as well as a determination of the credibility of witnesses, are issues for the trier of fact. State v. Smith (1991), 61 Ohio St.3d 284. Accordingly, an appellate court is bound to accept the factual determinations of the trial court so long as those findings are supported by competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739.
 {¶ 29} To justify an investigatory detention, a law enforcement officer must demonstrate specific and articulable facts which, when considered with the rational inferences drawn therefrom, would justify a reasonable suspicion that the individual who is stopped is involved in illegal activity. State v. Correa (1995), 108 Ohio App.3d 362, 366.
 {¶ 30} In this case, after listening to the testimony given by defendant and Officer Lamarre, and after observing their demeanor, voice inflection, posture, composure, and body movements, and also after considering the motives of each witness, the trial court clearly stated that it believed the testimony given by Officer Lamarre. That being the case, the trial court determined that the search of defendant's clothing for contraband was consensual, and was given at a time when defendant was not in custody, but was merely following Officer Lamarre to his vehicle so that Officer Lamarre could retrieve his ticket book to issue the defendant a citation for jaywalking.
 {¶ 31} When considering a motion to suppress, a trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. State v. Smith (1997), 80 Ohio St.3d 89. Thus, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657. Having considered defendant's arguments carefully, we are unable to conclude in this instance that the defendant has shown that the trial court abused its discretion, reached a conclusion that is not supported by the weight of the evidence, or reached a conclusion that is not supported by competent and credible evidence. Accordingly, defendant's first assignment of error is overruled.
 {¶ 32} In his second assignment of error, defendant claims that the trial judge in this case did not act in a neutral and detached manner. Specifically, defendant contends that "[t]he judge herein indicated by his actions that he was acting as a tool of the prosecution and was therefore not neutral and detached." (Defendant's brief at 18.) We find this contention to be without merit.
 {¶ 33} Defendant directs our attention to pages three and four of the trial transcript, alleging that at that time the judge prompted the prosecutor to use a letter against him, that had been written by the defendant to the trial judge. The fact of the matter is that the ex parte letter sent to the judge by the defendant had been filed and made part of the record. It had also been given to counsel for the state, as well as defense counsel. When defendant wished to speak about this letter, the trial court merely advised defendant of his rights, advised him not to say anything that might incriminate him or could be used against him, and advised him further to utilize his attorney to communicate with the court and opposing counsel. Defendant's argument that the court prevented him from taking the witness stand because certain statements in the letter could become relevant depending upon what defendant's testimony turned out to be is equally without merit. Finally, despite defendant's insinuation to the contrary, the trial court's rephrasing of a question did not constitute helping the prosecution such that the judge was acting with partiality. Therefore, defendant's second assignment of error is overruled.
 {¶ 34} In his third and final assignment of error, defendant argues that it was error for the trial court to allow the prosecutor to indirectly comment in closing argument upon defendant's failure to testify in his own defense. When prosecutorial misconduct is alleged, a reviewing court must determine whether the alleged statements were improper and, if so, whether those remarks deprived defendant of a fair trial. State v. Fears (1999), 86 Ohio St.3d 329; State v. Smith (1984),14 Ohio St.3d 13. The standard of review is the fairness of the entire trial, not the wrongfulness or culpability of the prosecutor. State v. Hill (1996), 75 Ohio St.3d 195.
 {¶ 35} Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. State v. Mann (1993), 93 Ohio App.3d 301. Even isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. State v. Carter (2000), 89 Ohio St.3d 593. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. Smith, supra. Finally, counsel is normally entitled to a certain degree of latitude in its concluding remarks. State v. Woodards (1966), 6 Ohio St.2d 14; State v. Liberatore (1982), 69 Ohio St.2d 583.
 {¶ 36} We have carefully reviewed the transcript, including the closing argument given by the prosecutor assigned to this case. Having done so, however, we are unable to conclude that any statement or remark made by the prosecutor so tainted this proceeding that we must grant the defendant a new trial. Thus, we overrule defendant's third assignment of error.
 {¶ 37} For the foregoing reasons, all three of defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and BROWN, JJ., concur.