JOURNAL ENTRY.
{¶ 1} Plaintiff-Appellant, State of Ohio, appeals a Hancock County Court of Common Pleas decision wherein the court ordered the suppression of evidence obtained against Defendant-Appellee, Brian O'Neal, as the result of a traffic stop. The state argues that the continued detention of the vehicle's occupants was justified by reasonable articulable suspicion. Upon review, we cannot say that the trial court abused its discretion or erred as a matter of law in concluding that the trooper lacked sufficient and articulable facts justifying a reasonable suspicion that the persons detained were involved in illegal activity. Accordingly, we must affirm the judgment of the trial court.
 {¶ 2} At 1:11 a.m., on August 27, 2002, Trooper Allen observed a 1972 Chevrolet Monte Carlo traveling southbound on Interstate 75 in Hancock County. Through the use of a laser speed-measuring device he determined the vehicle's speed to be 67 or 68 miles per hour. As the vehicle approached, it slowed down to 61 miles per hour and the driver stared straight ahead without glancing at Trooper Allen's cruiser.
 {¶ 3} Trooper Allen pulled out into the passing lane, followed the Monte Carlo, and called in the vehicle's license plate number. Trooper Allen was advised that the plates registered to the Monte Carlo were expired by four days. Upon learning the plates were expired, Trooper Allen activated his overhead lights and stopped the vehicle. Activation of the overhead lights initiated video recording equipment in the cruiser. The videotape showed that the vehicle was stopped at 1:11 a.m.
 {¶ 4} After the vehicle came to a stop, Trooper Allen approached and asked the driver to accompany him to the cruiser. Trooper Allen then determined the driver was Brian O'Neal and the passenger was Martel McKee (hereinafter jointly referred to as "Appellees"). While in the cruiser, Trooper Allen asked O'Neal about his recent travels. O'Neal stated he was returning to Lima, Ohio, after visiting his family in Roseville, Michigan, just outside of Detroit. O'Neal provided Trooper Allen with his driver's license. The dispatcher confirmed that O'Neal's driver's license was valid and that his plates were expired.
 {¶ 5} Trooper Allen then went to the passenger side of the Monte Carlo to speak with McKee about where he and O'Neal had been coming from. McKee replied that they had been in Detroit "messing around for a couple of hours" and were heading home. Trooper Allen called in McKee's information, including his social security number, to dispatch and was informed that McKee had a prior drug conviction.
 {¶ 6} Trooper Allen noted that while McKee appeared "really nervous," O'Neal appeared very calm. Based upon what Trooper Allen described as the calmness of the driver, nervousness of the passenger, conflicting stories, and the prior drug conviction of McKee, he contacted the Findlay Police Department at 1:18 a.m. to see if there was a canine unit available to come to his location. Trooper Allen also based his decision to call for the canine unit upon his perception that he might have smelled marijuana after speaking to both O'Neal and McKee.
 {¶ 7} The video reveals that at 1:20 a.m. Trooper Allen advised O'Neal that he would not be issuing a traffic citation; however, at 1:23 a.m. O'Neal was told that he would nevertheless have to remain roadside until the arrival of the canine unit. At approximately 1:39 a.m. the canine unit arrived and within two minutes the drug dog gave a positive signal alerting the officers to the possible presence of drugs. Trooper Allen then stuck his head inside the vehicle and at that point noticed what he described as a very strong odor of marijuana. Trooper Allen commenced a warrantless search of the vehicle. A substantial amount of marijuana was thereafter discovered in the vehicle.
 {¶ 8} O'Neal was indicted by the grand jury on September 3, 2002, for one count of possession of marijuana in violation of R.C. 2925.11(A), a felony in the third degree. Thereafter, he pled not guilty. On November 1, 2002, O'Neal filed a motion to suppress, stating that there was no reasonable suspicion or probable cause for the initial stop, as well as, the continued detention of Appellees.
 {¶ 9} A hearing was held on the motion to suppress on December 9, 2002. At the hearing, the court heard the testimony of Trooper Allen. In addition, Trooper Allen's testimony was supplemented by portions of the videotape of the stop. The videotape was admitted into evidence and viewed by the court in its entirety. At the conclusion of the hearing, the court ruled from the bench that the initial stop of Appellees was supported by the reasonable articulable suspicion of Trooper Allen that O'Neal committed two separate traffic violations, speeding in violation of R.C. 4511.21 and operating a vehicle with an expired registration in violation of R.C. 4503.11.
 {¶ 10} The court then took under advisement the issue of whether the continued detention of O'Neal after Trooper Allen's statement that he was not going to issue a traffic citation was unconstitutional. On March 6, 2003, the trial court granted the motion to suppress. The trial court found that the state failed to prove by a preponderance of the evidence that the continued detention of O'Neal was based on a reasonable articulable suspicion of Trooper Allen. On March 13, 2003, the state filed its notice of appeal. This appeal followed, where the state asserts the following sole assignment of error:
The trial court committed error when it concluded that the subsequentdetention of appellee was imporper and thereby suppressed the evidencefound during a search of an automobile following probable cause providedby a trained narcotics detecting dog.
 {¶ 11} The state argues in its assignment of error that the trial court erred in suppressing the evidence found in Appellees' vehicle. Appellate review of such rulings present mixed questions of law and fact.[1] A trial court assumes the role of trier of fact during proceedings on motions to suppress.[2] Thus, the evaluation of evidence and credibility of witnesses during those proceedings are issues to be determined by the trial court.[3] Factual findings by the court are to be accepted by a reviewing court unless they are "clearly erroneous."[4] That is to say, we are bound to accept a trial court's factual determinations made during a suppression hearing so long as the court's determinations are supported by competent and credible evidence.[5] The application of the law to those facts, however, is then subject to a de novo review.[6] Accordingly, appellate courts "independently determine as a matter of law, without deference to the trial court's conclusion, whether they met the applicable legal standard."[7] With these principles in mind, we turn our attention to the particular facts and circumstances of this case.
 {¶ 12} Our first order of business is to precisely define the issue before us for review. Appellant, the state, claims that the trial court erred in finding Trooper Allen lacked a reasonable and articulable suspicion of criminal activity to continue the detention after the purposes of the original stop had been satisfied.
 {¶ 13} It is well-settled law that a law enforcement officer's detention of an individual does not violate either the federal or state constitution if there are "specific and articulable facts" indicating that the detention was reasonable.[8] To justify an investigatory detention, law enforcement must demonstrate "specific and articulable" facts which, when considered with the rational inferences to be drawn therefrom, would justify a reasonable suspicion that the person detained was involved in illegal activity.[9] The reasonableness of the detention must be determined from the "totality of the circumstances."[10] The "totality of the circumstances" is to be viewed through the eyes of the reasonable and prudent officer on the scene who must react to events as they unfold.[11] An officer's "inchoate hunch" or mere suspicion of criminal activity will not justify continued detention.[12]
 {¶ 14} The evidence adduced below reveals that Trooper Allen detained the Appellees at the scene after the purpose of the original stop was satisfied because: (1) he thought he smelled what might have been marijuana; (2) the calmness of O'Neal; (3) the nervousness of McKee; (4) Appellees' conflicting stories; and, (5) McKee's prior drug conviction. The trial court found that "the connection between the facts observed by Trooper Allen and the conclusion he reached about them is far too weak and undefined to support an objective determination that he had reasonable and articulable suspicion that O'Neal was in possession of marijuana, justifying his continued detention of approximately twenty minutes." Given the totality of the circumstances in this case, we find no error in the trial court's ruling.
 {¶ 15} Trooper Allen was neither qualified as an expert in the identification of marijuana nor did he definitively identify the smell he detected as the smell of marijuana. Moreover, the gist of his testimony was that he only smelled the odor once when he approached the vehicle. Apparently, the trooper did not detect any lingering odor of the drug or any other smell which would lead him to believe that marijuana was present.
 {¶ 16} We acknowledge the Ohio Supreme Court's decision in Statev. Moore,[13] wherein the Court held that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." However, that case is distinguishable from this cause. The smell in Moore was described as a "strong odor" of fresh burnt marijuana which emanated from both the vehicle and from the defendant's clothing. By contrast, Trooper Allen, to his credit, candidly testified that he was uncertain that the smell that he detected was, in fact, marijuana. Additionally, we note that no evidence was adduced to establish that Trooper Allen was "qualified to recognize the odor" of marijuana as was done in Moore. We agree with the trial court's conclusion that the trooper's uncertain smell in this case was an insufficient foundation upon which to base the detention.
 {¶ 17} We are equally unpersuaded by the additional reasons set forth by Trooper Allen, including the contrasting demeanors of O'Neal and McKee, the conflicting stories, and McKee's prior drug conviction. As noted by the trial court, "if both nervousness and passivity are suspicious, then arguably all forms of human expression from the most banal to the most extreme could justify the stop and detention of individuals." As to the conflicting stories offered by O'Neal and McKee, while their stories were not identical, the inconsistencies were minor and any perceived inconsistency was due primarily to Trooper Allen's own lack of knowledge concerning the facts he received. Finally, the information Trooper Allen received as to McKee's prior drug conviction is also insufficient. Trooper Allen himself testified that the dispatcher never articulated the specific nature of the prior conviction and whether it related to the transportation of drugs and more specifically, the transportation of marijuana. He also testified that drug convictions range from very minor to very serious in nature. Without more detail about the conviction we are satisfied that mere knowledge of a prior conviction alone is simply insufficient to justify the continued detention of an individual.
 {¶ 18} In the case at bar, the trial court held that each of the above factors articulated by Trooper Allen was insufficient to give him the "reasonable and articulable suspicion" necessary to detain Appellees until backup arrived. Given that the trial court is in a better position than this court to view the witness, observe his demeanor, gestures and voice inflections, and then use those observations in weighing the credibility of his testimony, we will not second guess that decision.[14]
 {¶ 19} We emphasize that our ruling in this case is fact specific and that, under a slightly different set of circumstances, the trial court may well have properly found a "reasonable and articulable suspicion" of criminal activity. Accordingly, the facts as determined by the trial court herein are insufficient to warrant the detention of an otherwise law abiding suspect.
 {¶ 20} Having found no error prejudicial to the Appellant herein, the judgment of the Hancock County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BRYANT, P.J., and CUPP, J., concur.
[1] State v. McNamara (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539;United States v. Martinez (C.A. 11 1992), 949 F.2d 1117, 1119; UnitedStates v. Wilson (C.A. 11 1990), 894 F.2d 1245, 1254.
[2] State v. Payne (1995), 104 Ohio App.3d 364, 367, 662 N.E.2d 60;State v. Robinson (1994), 98 Ohio App.3d 560, 570, 649 N.E.2d 18;State v. Rossiter (1993), 88 Ohio App.3d 162, 166, 623 N.E.2d 645.
[3] State v. Smith (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668;State v. Brooks (1996), 75 Ohio St.3d 148, 154, 661 N.E.2d 1030; Statev. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583.
[4] State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1.
[5] State v. Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7;State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906.
[6] State v. Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034;Harris, 98 Ohio App.3d at 546; also, see, United States v. Lewis (C.A. 1 1994), 40 F.3d 1325, 1332; Wilson, 894 F.2d at 1254.
[7] McComb v. Andrews, 3rd Dist. No. 5-99-41 at * 2,2000-Ohio-1663.
[8] State v. Chatton (1984), 11 Ohio St.3d 59, 61, 463 N.E.2d 1237;Maumee v. Johnson (1993), 90 Ohio App.3d 169, 171, 628 N.E.2d 115;State v. Foster (1993), 87 Ohio App.3d 32, 40, 621 N.E.2d 843; Statev. Hart (1988), 61 Ohio App.3d 37, 41, 572 N.E.2d 141.
[9] State v. Correa (1995), 108 Ohio App.3d 362, 366,670 N.E.2d 1035.
[10] State v. Comen (1990), 50 Ohio St.3d 206, 210, 553 N.E.2d 640; also, see, State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489;State v. Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044.
[11] State v. Carter (1994), 69 Ohio St.3d 57, 65, 630 N.E.2d 355;State v. Andrews (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271.
[12] State v. Gonsior (1996), 117 Ohio App.3d 481, 486,690 N.E.2d 1293.
[13] State v. Moore (2000), 90 Ohio St.3d 47, 52, 734 N.E.2d 804
(emphasis added).
[14] See Myers v. Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742;Seasons Coal Co. v. Cleveland (1984) 10 Ohio St.3d 77, 80,461 N.E.2d 1273.