[Cite as *State v. Newton*, 2011-Ohio-2188.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee                  :          C.A. CASE NO.    24154

v.                                      :          T.C. NO.    07CR478

GARY N. NEWTON                          :          (Criminal appeal from
                                                   Common Pleas Court)
    Defendant-Appellant             :

                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____6th____ day of ____May____ , 2011.

. . . . . . . . . .

LAURA M. WOODRUFF, Atty. Reg. No. 0084161, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020, 130 W. Second Street, Suite 2150, P. O. Box 1262, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Gary Newton appeals from a judgment of the Montgomery County Court of Common Pleas, which overruled his motion to vacate a plea he entered in 2007.   For the reasons discussed below, the trial court's judgment will be affirmed.

{¶ 2}  In 2007, Newton was indicted as follows: Count One – possession of cocaine in an

amount greater than or equal to 1,000 grams (not crack cocaine), with a major drug offender specification; Count Two – possession of cocaine (not crack cocaine) in an amount greater than or equal to 500 grams, but less than 1,000 grams; and several counts of possession of criminal tools.

{¶ 3} Newton pled not guilty and filed a Motion to Dismiss the major drug offender specification related to Count One, arguing that *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio 856, had found unconstitutional the sentencing scheme by which a trial court made factual findings in support of a major drug offender specification. He also filed a motion to suppress evidence.

{¶ 4} On June 28, 2007, the trial court had not yet ruled on Newton's motions. Nonetheless, pursuant to a plea and sentencing agreement, Newton pled guilty to Counts One and Two, including the major drug offender specification. The next day, Newton withdrew his motion to dismiss the major drug offender specification and his motion to suppress. The counts of possession of criminal tools were dismissed. The trial court sentenced Newton to an agreed sentence of ten years each on Counts One and Two, to be served concurrently. It also suspended his driver's license for five years and ordered him to pay a mandatory fine of $10,000. The court did not impose any additional sentence related to the major drug offender specification.

{¶ 5} In March 2010, Newton filed a motion to vacate his plea.[1] The court held a hearing on the motion, and Newton filed a post-hearing memorandum in support of the motion. The State did not respond. The trial court overruled Newton's motion to vacate his plea.

---

[1] Newton filed his first Motion to Vacate Plea in February 2010, but he withdrew that motion and filed an amended motion in March 2010.

{¶ 6} Newton appeals from the trial court's order overruling his motion to vacate his plea, raising two assignments of error. The assignments are related, and we will consider them together.

{¶ 7} "THE TRIAL COURT ABUSED ITS DISCRETION IN HOLDING THE MAJOR DRUG OFFENDER (MDO) SPECIFICATION IS CONSTITUTIONAL"

{¶ 8} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO VACATE HIS PLEA BASED UPON HIM ENTERING A PLEA TO AN UNCONSTITUTIONAL SPECIFICATION WHICH INFLUENCED HIS PLEA NEGOTIATIONS."

{¶ 9} Newton's arguments under his assignments of error mirror his arguments in the motion to vacate his plea. In essence, he claims that his plea was not knowingly and voluntarily entered because the major drug offender specification contained in his indictment was unconstitutional, he was unaware of this fact at the time of his plea, and he thus did not correctly calculate the maximum possible sentence he faced and failed to negotiate a more favorable plea agreement.

{¶ 10} Initially, we note that Newton mischaracterizes, to some extent, the choice he faced in the plea negotiations. He claims that, "if the MDO was not present, then he could have negotiated a lower term of imprisonment." Similarly, he claimed in his motion to vacate his plea that he believed he had faced a maximum sentence of twenty years when he entered the plea agreement for a ten-year sentence; "if [he] had known the maximum penalty he faced was actually ten years, he would not have entered his plea" because he received "no benefit" from it.

{¶ 11} As the trial court noted in its order overruling Newton's motion to vacate his plea,

Newton's possession of over 1,000 grams of cocaine (not crack) classified him as a major drug offender, and the trial court was required to impose the maximum prison term prescribed for a felony of the first degree. R.C. 2925.11(C)(4)(f). The maximum term is ten years. R.C. 2929.14(A)(1). Furthermore, because he was a major drug offender, the trial court had discretion to impose an additional one- to ten-year prison term. R.C. 2929.14(D)(3)(b); *Foster* at ¶99. Newton additionally faced three to ten years of incarceration on the second count of possession of cocaine, R.C. 2925.11(C)(4)(e) and R.C. 2929.14(A)(1), and additional time on the counts of possession of criminal tools. He also could have been given consecutive terms of imprisonment. Thus, Newton could not have pled guilty to Count One in the indictment and received a sentence of less than ten years, as he claims, and his maximum potential sentence was more than thirty years; he undoubtedly received a benefit from his plea agreement.

{¶ 12} Newton argues that he did not enter his plea knowingly because he did not realize, at the time of his plea, that the major drug offender specification was unconstitutional and should not or could not have been used to enhance his sentence.[2] Newton's argument that the major drug offender specification was unconstitutional is based on his interpretation of *Foster*.

{¶ 13} In *Foster*, the Supreme Court of Ohio held that R.C. 2929.14(D)(3)(b) was unconstitutional because it "require[d] judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before repeat-violent-offender and major-drug-offender penalty enhancements are imposed." Id. at ¶83. *Foster* "severed" the offending provisions and held that "judicial fact-finding is not required before imposition of

---

[2]Newton raises this argument notwithstanding the motion to dismiss filed prior to his plea, in which he argued precisely this issue: that the major drug offender specification was unconstitutional pursuant to *Foster*.

additional penalties for repeat-violent-offender and major-drug-offender specifications." *Foster*, paragraph six of the syllabus.

{¶ 14} Soon after the decision in *Foster*, and four months after Newton's pleas of guilty, we decided a case in which a defendant, after a jury trial, argued that an eight-year major drug offender enhancement to a maximum sentence for possession of drugs was unconstitutional because it was based on the portion of R.C. 2929.14 declared unconstitutional in *Foster*. *State v. Dillard*, 173 Ohio App.3d 373, 2007-Ohio-5651. We concluded that the "add-on sentence" could not be predicated upon R.C. 2929.14(D)(3)(b), "which provided the only statutory language permitting an enhancement to the underlying ten-year term [and had] been excised from the statutory scheme." Id. at ¶100. Thus, we held that the enhanced sentence for the major drug offender specification in *Dillard* was unconstitutional. Id. Several other appellate districts took a different view, holding that the effect of *Foster* was to sever from R.C. 2929.14(D)(3)(b) only the language that required judicial fact-finding as a prerequisite to imposing the additional sentence. See, e.g., *State v. Pena*, Franklin App. No. 06AP-688, 2007-Ohio-4516, ¶14; *State v. Adams*, Lake App. No. 2006-L-114, 2007-Ohio-2434, ¶27; *State v. Foster*, Wood App. No. WD-06-013, 2007-Ohio-1524, ¶17.

{¶ 15} In 2009, the Supreme Court clarified the effect of *Foster* on the repeat-violent-offender and major-drug-offender specifications. *State v. Hunter*, 123 Ohio St.3d 154, 2009-Ohio-4147. In *Hunter*, the defendant was found guilty of felonious assault by a jury, but he "stipulated to the facts necessary to designate him as a repeat violent offender." Id. at ¶3. On appeal, he challenged the imposition of the repeat violent offender specification, relying on *Foster*. The Supreme Court stated:

{¶ 16} "Our opinions in *Foster* and [*State v.*] *Mathis*, [109 Ohio St.3d 54, 2006-Ohio-855] patently demonstrate our intent to excise only the portions of former R.C. 2929.14(D)(2)(b) that required judicial fact-finding in violation of the Sixth Amendment and the United States Supreme Court's decisions in *Apprendi*[3] and *Blakely*.[4] We never specifically precluded a trial court from imposing enhanced penalties for a repeat violent offender specification, nor did we excise the definition of a repeat violent offender as set forth in former R.C. 2929.01(DD). Furthermore, none of our decisions after *Foster* indicate that this specification no longer exists. Thus, *Foster* excised judicial fact-finding from former R.C. 2929.14(D)(2) but did not eliminate the repeat violent offender specification ***." Id. at ¶27 (footnotes added).

{¶ 17} R.C. 2929.14(D)(2)(b) imposes enhanced sentences on repeat violent offenders; R.C. 2929.14(D)(3)(b) contains the parallel provisions for a major drug offender. In *Hunter*'s more general language, the court indicated that the existence of the major drug offender specification also had been unaffected by *Foster* except to eliminate the need for judicial fact-finding. Id. at ¶26. And it did not excise the definition of a major drug offender as set forth in R.C. 2929.01(X).

{¶ 18} In addition to holding that *Foster* had not eliminated the specifications, *Hunter* identified three reasons why, under the facts of that case, the trial court's imposition of a repeat violent offender specification did not violate Hunter's Sixth Amendment right to a jury trial. First, Hunter had "waived whatever right he had" with respect to a jury determination of the

---

[3] *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.

[4] *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 158 L.Ed.2d 403.

repeat violent offender specification because "he chose to submit that determination to the court to avoid presenting evidence of his prior conviction *** to the jury." Id. at ¶30-31. Second, Hunter had "stipulated to all the facts necessary for the trial court to designate him as a repeat violent offender;" specifically, he stipulated that he had previously been charged with felonious assault, that the indictment had specified that he caused physical harm to the victim, that he had pled guilty to the offense as charged in the indictment, and that he had been sentenced to prison.

{¶ 19} *Hunter* concluded that, because of the stipulations, the trial court had no need to conduct fact-finding before designating Hunter as a repeat violent offender, so no Sixth Amendment violation had occurred. Id. at 32-33. Third, relying on *Apprendi, Hunter* concluded that "the Sixth Amendment does not bar judicial consideration of a defendant's prior convictions at sentencing because 'recidivism *** is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence;'" it held that a sentencing court may look not only at the existence of the prior conviction, but may also consider other "relevant information about the offender's prior conviction that is part of the judicial record" in determining whether he is a repeat violent offender, without violating the Sixth Amendment. Id. at ¶35, ¶37-38.

{¶ 20} Although *Hunter* involved a repeat violent offender specification (which, if anything, requires more "fact-finding" than does a major drug offender specification), its discussion of *Foster* left little doubt of the Supreme Court's view that both the repeat violent offender specification and the major drug offender specification survived *Foster* and that *Foster* had excised only the need for judicial fact-finding prior to the imposition of enhanced sentences based on those specifications. Numerous appellate courts have now applied the reasoning in

*Hunter* to cases involving major drug offender specifications. See, e.g., *State v. Black*, Hamilton App. Nos. C-100357 and C-100358, 2011-Ohio-1330, ¶30; *State v. Jones*, Jefferson App. No. 08 JE 20, 08 JE 29, 2010-Ohio-2704, ¶17; *State v. Walker*, Fayette App. No. CA2009-02-002, 2010-Ohio-329, ¶29.

{¶ 21} Newton relies on our holding in *Dillard* in support of his argument that the major drug offender specification is unconstitutional. The Supreme Court's ruling in *Hunter*, however, rejected the view we expressed in *Dillard* that the specification imposing an enhanced sentence for a major drug offender could never survive *Foster; Hunter* made clear that the major drug offender specification contained in R.C. 2929.14(D)(3)(b) was not totally eliminated or rendered unconstitutional by *Foster*. This holding undercuts Newton's argument that "he never faced that additional ten year penalty" connected with the major drug offender specification and would not have entered a plea if he had known that the major drug offender specification was unconstitutional. The major drug specification was not unconstitutional, so it appears that Newton entered his plea with an accurate understanding of the potential penalty he faced.

{¶ 22} Newton also claims that *Hunter* is distinguishable, because its reasoning emphasized a trial court's ability to make findings regarding prior convictions, which is relevant to a repeat violent offender specification, but not to a major drug offender specification. Under the facts presented in this case, we find this distinction to be immaterial. *Hunter*'s rationale was unique to repeat violent offenders only with respect to the third of its three reasons for rejecting the constitutional argument presented in that case. The first two reasons – the defendant's waiver of judicial fact-finding and his stipulation to the relevant facts – are dispositive of Newton's appeal.

**{¶ 23}** *Hunter* expressly stated that a defendant can consent to judicial fact-finding. Id. at ¶30. Newton's plea of guilty to two counts of possession of cocaine, including the major drug offender specification contained in the first count, constituted his consent to having the issue determined by the court, rather than a jury. Thus, he waived any potential objection to judicial fact-finding on this issue. Furthermore, *Hunter* held that a "trial court ha[s] no need to conduct fact-finding" in connection with a specification contained in an indictment if the defendant's stipulations establish the specification. Id. at ¶33. A plea of guilty is a complete admission of factual guilt and, accordingly, the defendant's factual guilt is removed from further consideration. *State v. Salmon*, Montgomery App. No. 24305, 2011-Ohio-1289, ¶4, citing *Menna v. New York* (1975), 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195. Newton's plea of guilty to possession of more than 1,000 grams of powder cocaine and to the major drug offender specification constituted a "stipulation" or admission and eliminated the need for judicial fact-finding on this specification. For these reasons, Newton's constitutional rights were not violated by judicial fact-finding.

**{¶ 24}** As we have discussed and as Newton points out, the *Hunter* opinion did set forth a third reason for its holding that a repeat violent offender specification does not involve judicial factfinding: the "traditional" consideration of a defendant's prior convictions at sentencing through reliance on judicial records. Newton argues that this rationale cannot be applied to a major drug offender specification, and we agree. Nonetheless, we find that *Hunter*'s emphasis on the defendant's waiver of his right to fact-finding by a jury and his stipulation to facts establishing the sentencing enhancement compel us to conclude that Newton's constitutional rights were not violated in this case.

{¶ 25} Pursuant to Crim.R. 32.1, a defendant must demonstrate a "manifest injustice" to withdraw a guilty plea after sentencing. "A manifest injustice has been defined as 'a clear or openly unjust act' that involves 'extraordinary circumstances.'" *State v. Minker,* Champaign App. No. 2009 CA 16, 2009-Ohio-5625, ¶25, quoting *State v. Stewart*, Greene App. No. 2003-CA-28, 2004-Ohio-3574. See, also, *State v. Tunstall*, Montgomery App. No. 23730, 2010-Ohio-4926, ¶9. We review a trial court's ruling on a post-sentence motion to withdraw a plea for an abuse of discretion. *Xenia v. Jones*, Greene App. No. 07-CA-104, 2008-Ohio-4733, ¶6.

{¶ 26} The trial court did not abuse its discretion in holding that Newton was aware of potential challenges to the major drug offender specification and that the (perceived) ambiguity about the specification had been factored into his decision to accept the plea agreement. The trial court correctly found that, at the time of his plea, the Supreme Court had excised the objectionable provisions of the sentencing statutes that required judicial fact-finding and that the major drug offender specification had not been eliminated by *Foster*, as Newton now claims. The trial court also found that the information provided to Newton before the plea by his attorney as to the potential penalties he faced had been accurate. The trial court concluded that Newton "has had nothing more than a change of heart" and that "given the nature of the evidence against Newton, the outcome negotiated by [his attorney] was remarkably favorable."

{¶ 27} The trial court did not abuse its discretion in overruling Newton's motion to vacate his plea. Because Newton made a knowing, voluntary, and intelligent decision to plead guilty, and his argument was based on an incorrect view that the major drug offender specification is unconstitutional, he did not demonstrate a manifest injustice.

{¶ 28} The assignments of error are overruled.

{¶ 29} The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Laura M. Woodruff
Jon Paul Rion
Hon. Mary Katherine Huffman