[Cite as *State v. Delossantos*, 2012-Ohio-1383.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

WELLINGTON F. DELOSSANTOS

    Appellant

C.A. No.     11CA009951


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    02CR061571

DECISION AND JOURNAL ENTRY

Dated: March 30, 2012

---

BELFANCE, Presiding Judge.

{¶1} Wellington Delossantos appeals his conviction for possession of heroin with a major drug offender specification. For the reasons set forth below, we affirm.

I.

{¶2} On September 26, 2002, Trooper Joel Smith observed a van commit three marked lane violations. Trooper Smith noticed that the van had New Jersey license plates and was concerned that the driver was tired from driving cross-country. After the third lane violation, Trooper Smith initiated a traffic stop.

{¶3} Trooper Smith spoke with Mr. Delossantos, who was driving the vehicle. Mr. Delossantos admitted to being tired and said that he was driving from New Jersey to Michigan to visit a cousin. He told Trooper Smith that he planned to stop at the next rest area, even though he had just driven past one. Mr. Delossantos also told Trooper Smith that his girlfriend had rented the van but that he did not know her last name.

{¶4}   Trooper Smith had begun to return to his cruiser to write a citation for Mr. Delossantos when Trooper Terry Helton arrived on the scene.  Trooper Smith asked Trooper Helton to walk his drug-sniffing dog Alex around Mr. Delossantos' van.  As Trooper Smith attended to his investigation, he asked Mr. Delossantos to sit in his cruiser while Trooper Helton walked the dog around the van.  Alex alerted on the van, so Trooper Smith advised Mr. Delossantos of his *Miranda* rights.  He and Trooper Helton then conducted a search of the van.  During the search, they discovered 1,400 grams of heroin.

{¶5}   On January 8, 2004, Mr. Delossantos failed to appear for the final pre-trial.  Mr. Delossantos was eventually arrested and extradited to Ohio in June 2009.  Mr. Delossantos pleaded no contest in December 2010, and the trial court found him guilty of possession of heroin with a major drug offender specification.  Mr. Delossantos has appealed, raising five assignments of error for our review.  For ease of discussion, we have rearranged his assignments of error.

II.

ASSIGNMENT OF ERROR V

THE TRIAL COURT RULED TO THE DETRIMENT OF DELOSSANTOS WHEN IT RULED THAT THE OFFICERS DID NOT EXCEED THE TIME NECESSARY TO EFFECTUATE THE PURPOSE OF THE TRAFFIC STOP.

{¶6}   In his merit brief, Mr. Delossantos suggests that Troopers Smith and Helton impermissibly extended the traffic stop.  However, Mr. Delossantos does not develop an argument in support of this assignment of error.  *See* App.R. 16(A)(7).  Instead, without pointing to specific portions of the record, he recounts the facts of *State v. Correa*, 108 Ohio App.3d 362 (6th Dist.1995), and concludes that "[a]s the facts in *Correa* are almost identical to the facts in

the case at bar, the trial court should have suppressed the evidence found in [Mr.] Delossantos' vehicle." We disagree.

{¶7} Generally, review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review its application of the law to the facts de novo. *State v. Metcalf*, 9th Dist. No. 23600, 2007–Ohio–4001, ¶ 6. Mr. Delossantos does not challenge any of the trial court's findings of fact, and, upon our review of the record, the trial court's findings are supported by competent, credible evidence. Accordingly, we defer to its findings. *See id.*

{¶8} Mr. Smith does not challenge the propriety of the initial stop. Instead, relying upon *Correa*, Mr. Delossantos is apparently arguing that Trooper Smith impermissibly prolonged the stop and engaged in a "'fishing expedition[.]'" *See Correa*, 108 Ohio App.3d at 366. Mr. Smith is correct that it is not constitutionally permissible for a law enforcement officer to prolong a stop or expand its scope once the purpose of the stop has been completed. However, "[a] traffic stop is not unconstitutionally prolonged when permissible background checks have been diligently undertaken and not yet completed at the time a drug dog alerts on the vehicle." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, paragraph one of the syllabus. In this instance, Trooper Smith initiated a stop and spoke with Mr. Delossantos. He inquired whether Mr. Delossantos was tired, and Mr. Delossantos affirmatively responded. He asked for Mr. Delossantos' license and registration and learned that the van was rented in the name of a female who was not present. Mr. Delossantos was listed as an alternate driver on the rental agreement and told Trooper Smith that the woman listed on the agreement was his girlfriend, but Mr. Delossantos did not know her last name.

{¶9} Trooper Smith was walking back to his cruiser to conduct background checks and write Mr. Delossantos a citation for the marked lanes violations when Trooper Helton arrived. Trooper Smith asked Trooper Helton to walk his drug-sniffing dog around Mr. Delossantos' van and returned to ask Mr. Delossantos to come sit in his cruiser. From the record, it appears that Trooper Helton had begun walking the dog around the van as Trooper Smith was having Mr. Delossantos sit in his cruiser to issue the citation and to complete his check on the license and registration. According to Trooper Smith, the dog alerted on its second walk around the van.

{¶10} *Correa* is readily distinguishable from these facts because the officer in that case had already completed the investigative purpose of his stop, i.e. his concern that the vehicle's driver was intoxicated. *Id.* at 365. In this case, Trooper Smith observed Mr. Delossantos commit three marked lanes violations. Upon stopping Mr. Delossantos, Trooper Smith discovered the vehicle was being rented and that, although the female listed in the agreement was purportedly Mr. Delossantos' girlfriend, he did not know his girlfriend's last name. Trooper Smith testified that he planned to issue Mr. Delossantos a citation. The record reflects that Trooper Smith was also going to check Mr. Delossantos' license and registration. When the dog alerted, Trooper Smith had not completed the license and registration checks, nor written the citation. Given the facts in this case, we cannot conclude that Trooper Smith impermissibly extended the stop. *See Batchili* at paragraph one of the syllabus. Thus, Mr. Delossantos' reliance upon *Correa* is misplaced. Mr. Delossantos' fifth assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED TO THE DETRIMENT OF DELOSSANTOS WHEN IT RULED THAT THE SEIZURE AND SUBSEQUENT SEARCH OF DELOSSANTOS' VEHICLE WAS CONSTITUTIONAL.

{¶11} In Mr. Delossantos' fourth assignment of error, he argues that the evidence discovered in his van was the result of an illegal search because Troopers Smith and Helton illegally seized him by having him sit in Trooper Smith's cruiser. He reasons that, if the officers illegally seized him, "then any evidence that was discovered subsequent to the seizure should not have been admitted as it would have been the fruit of the poisonous tree."

{¶12} We initially note that, even assuming that Trooper Smith's act of asking Mr. Delossantos to sit in his cruiser did constitute an illegal seizure under the Fourth Amendment, Mr. Delossantos has not pointed to any evidence obtained by this seizure. The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect * * *." (Internal quotations and citation omitted.) *United States v. Leon*, 468 U.S. 897, 906 (1984). However, in order for the exclusionary rule to be applicable, the evidence must have been unlawfully obtained. *See id*. at 910.

{¶13} As noted above, Mr. Delossantos has not challenged the legality of the initial traffic stop nor the legality of the search of the vehicle after the dog alerted. The heroin discovered in Mr. Delossantos' vehicle was not discovered on his person; rather, it was discovered during a traffic stop upon search of the vehicle that was prompted by an alert by a trained drug-sniffing dog. Notably, there is no evidence that Mr. Delossantos was subjected to a pat-down prior to the dog alerting or that any evidence was obtained as a result of him sitting in the cruiser. Thus, even if Trooper Smith illegally seized Mr. Delossantos by having him sit in the Trooper's vehicle, no evidence was obtained as a result.

{¶14} Mr. Delossantos has not pointed to any evidence obtained in violation of the Fourth Amendment as a result of the illegal seizure of his person. Accordingly, his fourth assignment of error is overruled. *See Leon*, 468 U.S. at 910.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED TO THE DETRIMENT OF DELOSSANTOS WHEN IT RULED THAT THE STATE COULD PRESENT 404(B) EVIDENCE AT TRIAL EVEN THOUGH THE EVIDENCE WAS SUBMITTED INTO EVIDENCE TWO DAYS BEFORE TRIAL.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED TO THE DETRIMENT OF DELOSSANTOS WHEN IT RULED THAT THE 'OTHER ACTS' EVIDENCE THE STATE WANTED TO PRESENT WAS ALLOWABLE 404(B) EVIDENCE.

{¶15} In his second and third assignments of error, Mr. Delossantos argues that the trial court erred when it ruled that it would allow the State to present 404(B) evidence that the State informed him of less than a week before trial.

{¶16} On December 10, 2010, Mr. Delossantos filed a motion in limine in which he sought to prevent the State from presenting newly discovered evidence on the basis of Evid.R. 403(B). The gist of the motion centered upon Mr. Delossantos' assertion that the State had failed to timely disclose an investigatory report because the report had been given to counsel on December 8, 2010, five days before trial. The motion did not contain any reference to Evid.R. 404(B).

{¶17} On December 13, 2010, before Mr. Delossantos' trial began, the trial court heard argument concerning all of Mr. Delossantos' outstanding motions, which included the motion in limine. It was at this hearing that Evid.R. 404(B) was first mentioned. However, it was the State that first referred to Evid.R. 404(B), though it is unclear whether it misread Mr. Delossantos' motion in limine or if it was reacting to a conversation with Mr. Delossantos' counsel that occurred prior to going on the record. After the court had heard argument, it stated that it was "going to take a look at it again[,]" and that it would render a decision prior to the start of trial. However, the trial court never ruled on the Evid.R. 404(B) matter or whether the State had

improperly failed to timely disclose the report because Mr. Delossantos elected to enter a plea. Thus, contrary to Mr. Delossantos' stated assignments of error, the trial court did not ever rule that the alleged other acts evidence was admissible. Rather, several days after Mr. Delossantos entered his plea, the trial court denied his motion in limine.

{¶18} Generally, a motion in limine is an interlocutory order that does not preserve an error for appeal absent a timely objection at trial. *See State v. Echard*, 9th Dist. No. 24643, 2009-Ohio-6616, ¶ 4, citing *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, ¶ 35. However, the intent of the Criminal Rules is to "'determine matters before trial when possible[]'" and, therefore, an error may be preserved if the issue is "capable of determination without a trial on the general merits." *State v. Ulis*, 65 Ohio St.3d 83, 85 (1992), quoting *Defiance v. Kretz*, 60 Ohio St.3d 1, 4 (1991); *see also Akron v. Carter*, 190 Ohio App.3d 420, 2010-Ohio-5462, ¶ 8 (9th Dist.).

{¶19} In his motion in limine, Mr. Delossantos sought to prevent the State from using a report because the State had allegedly improperly delayed its disclosure. The record reflects that the State disputed the allegation that it had delayed disclosure of the report. When the parties appeared before the trial court, the State told the court that it had given Mr. Delossantos the evidence as soon as it had learned about it, a claim that Mr. Delossantos does not dispute. Assuming that this issue was preserved for appeal, Mr. Delossantos has not developed any legal argument as to how the trial court's ultimate denial of his motion was erroneous. It is well settled that the trial court has discretion to prohibit the use of evidence if it finds that the State has not properly adhered to its discovery obligations. Mr. Delossantos has not explained how the trial court's denial of his motion constitutes an abuse of the court's discretion, nor how he was prejudiced under the circumstances of this case.

**{¶20}** Regarding his contention that the trial court erred in determining that the other acts evidence was allowable, as noted above, the trial court never ruled that the alleged Evid.R 404(B) evidence was allowable or not allowable. Accordingly, there is no ruling for this Court to review.

**{¶21}** Mr. Delossantos' second and third assignment of errors are overruled.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO THE DETRIMENT OF DELOSSANTOS WHEN IT RULED THAT THE RELEVANT MDO STATUTE WAS CONSTITUTIONAL AND THAT DELOSSANTOS COULD BE SENTENCED TO MORE THAN TEN YEARS IN PRISON.

**{¶22}** In Mr. Delossantos' first assignment of error, he essentially argues that the major drug offender statute is unconstitutional and, therefore, the trial court incorrectly informed him about the maximum sentence that he faced. Thus, according to Mr. Delossantos, he did not make his no contest plea knowingly as he would not have pleaded no contest if he had known he could only serve a maximum of 10 years. We disagree.

**{¶23}** In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court severed the judicial fact finding portions of former R.C. 2929.14(D)(2)(b) and (D)(3)(b). *Id*. at paragraphs five and six of the syllabus. "After the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications." *Id*. at paragraph six of the syllabus. "*Foster* excised the requirement that the court make findings of fact before imposing * * * penalty enhancements for repeat violent offenders or major drug offenders." (Internal citations omitted.) *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 26. However, *Foster* did not eliminate the major drug offender specification. *See State v. Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, ¶ 27 ("*Foster* excised judicial fact-finding from former R.C. 2929.14(D)(2) but did not eliminate the repeat violent

offender specification, as defined in former R.C. 2929.01(DD).”); *see also State v. Newton*, 2nd Dist. No. 24154, 2011-Ohio-2188, ¶ 17-23.

{¶24} Since Foster did not eliminate the major drug offender specification, if Mr. Delossantos had been found to be a major drug offender by the jury or had stipulated to possession of a quantity of heroin sufficient to find him to be a major drug offender, the trial court could have sentenced Mr. Delossantos up to an additional 10 years in prison. *See Hunter* at ¶ 32-33, 40. Thus, the trial court's statement that Mr. Delossantos faced up to 20 years in prison correctly informed him of the maximum sentence that he faced.

{¶25} Accordingly, Mr. Delossantos' argument that he did not make a knowing, intelligent, and voluntarily plea is not well taken. His first assignment of error is overruled.

III.

{¶26} Mr. Delossantos' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
CONCURS IN JUDGMENT ONLY.

DICKINSON, J.
CONCURRING.

{¶27} I concur in the majority's judgment and all of its opinion except Paragraphs 18 and 19, which are unnecessary to the resolution of Mr. Delossantos's assignments of error.

APPEARANCES:

KENNETH N. ORTNER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.